STATE EX REL. COTTER, RELATOR, *v.* DISTRICT COURT
ET AL., RESPONDENTS.

(No. 3,452.)

(Submitted March 26, 1914. Decided April 22, 1914.)

[140 Pac. 732.]

*Husband and Wife—Letters of Administration—Special Ad-*
*ministrators—Selection—Revision of Statutes—Title—Con-*
*stitution—Divorce—Remarriage.*

Husband and Wife—Letters of Administration—Who Entitled Thereto.
    1.  The surviving husband or wife is, under section 7432, Revised
    Codes, entitled to letters of administration to the exclusion of any other
    person unless one of the grounds of incompetency enumerated in sec-
    tion 7436 is shown to exist.

Same—Special Administrators—Preference to Appointment.
    2.  In the absence of a showing of incompetency, the person who is
    entitled to letters testamentary or of administration must be given the
    preference in the selection of a special administrator.

Statutes—Revision of—Title.
    3.  A bill the purpose of which is to revise by amendment the law on
    a particular subject, *held* to fall within the exception of section 23,
    Article V, of the state Constitution that no bill "except bills for the
    * * * general revision of the laws" shall be passed containing more
    than one subject, which shall be clearly expressed in its title.

    [As to sufficiency of title to amendatory or revisory Acts, see notes
    in 79 Am. St. Rep. 456; 86 Am. St. Rep. 267.]

Same—Divorce—Remarriage—Statutes.
    4.  Under the above rule, section 3657, Revised Codes (section 91, Civil
    Code of 1895, as reported by the Code Commissioner), regulating re-
    marriage of divorced persons, *held* to have been repealed by House Bill
    142, approved March 6, 1895, an Act to amend certain sections of the
    Civil Code dealing with the subject of divorce, though the title of
    the repealing Act did not contain any reference to section 91.

Same—Constitutionality—Construction—Considerations Entering Into.
    5.  Where attorneys general for nineteen years had advised county
    officers that section 3657, Revised Codes, prohibiting the remarriage
    of divorced persons for a certain number of years, had been repealed,
    the supreme court would, in case of doubt on the question whether the
    repealing Act had been constitutionally enacted, be inclined to uphold
    it in view of the disastrous consequences which would follow a contrary
    holding.

Original application by the state, on the relation of Harry
C. Cotter, against the district court of Lewis and Clark county
and one of the judges thereof, for a supervisory order annulling
an order made in a probate proceeding. Order annulled.

*Mr. W. D. Rankin* and *Mr. H. A. Frank* submitted a brief in behalf of Relator; *Mr. Frank* argued the cause orally.

*Mr. C. B. Nolan,* for Respondents, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On December 22, 1913, Mary Margaret Cotter died in Lewis and Clark county, leaving a will in which Thomas Cruse, her father, is named as her sole legatee. The will does not designate an executor. On December 29 Thomas Cruse filed in the district court a petition asking that the will be admitted to probate and that he be appointed administrator with the will annexed of the estate of the deceased. On January 9, 1914, the relator herein, as surviving husband of the deceased, appeared to contest the will by filing written grounds in opposition to the probate of it. At the same time he presented to the court a petition asking that he be appointed special administrator pending a determination of the contest. On January 16 Thomas Cruse filed his petition asking that he be appointed, presenting therewith, in writing, objections to the appointment of the relator on the grounds, among others, that he is not the surviving husband of the deceased, and that he is incompetent to act as administrator by reason of his improvidence. The petitions and objections were heard together, with the result that on January 27 the court made and caused to be entered an order denying the petition of the relator, and appointing Thomas Cruse. Thereupon, there being no appeal, the relator applied to this court for a supervisory order annulling the order of the district court and directing the appointment of himself. Two questions are submitted for decision, *viz.:* Whether, upon the facts disclosed, the relator is the surviving husband of the deceased; and whether he is incompetent by reason of his improvidence.

Upon the assumption that he is the surviving husband of the deceased, and legal cause was shown for the appointment of a special administrator (that such cause was shown is not now controverted), the relator was *prima facie* entitled to the appointment. The surviving husband or wife is entitled to [1, 2] general letters of administration, to the exclusion of any other person (Rev. Codes, sec. 7432), unless at least one of the grounds of incompetency enumerated in section 7436 is shown. In selecting a person to act as special administrator, the court or judge is expressly required to give preference to the person who is entitled to letters testamentary or of administration. (Section 7472.) A refusal to accord the preference thus given, in the absence of a showing of incompetency, is a direct violation of this provision. (*State ex rel. Eakins* v. *District Court,* 34 Mont. 226, 85 Pac. 1022.)

It appears that the deceased obtained a divorce from her first husband by a decree of the district court of Lewis and Clark county, on May 19, 1911, and that she and the relator were married at Boulder, in Jefferson county, on October 26, 1911. It was insisted by counsel for Thomas Cruse in the district court, and the same argument was made at the hearing [3, 4] in this court, that the second marriage, being within the prohibition of section 3657 of the Revised Codes, was void, and hence that the relator, not having thereby become the lawful husband of the deceased, occupies the position of a stranger to the estate, and is not entitled to administer it, without regard to the question whether he is otherwise competent. Counsel for the relator have proceeded upon the assumption that section 3657 *supra,* was repealed by an Act of the legislative assembly approved March 6, 1895, and hence could not affect the validity of the marriage. This assumption, it is said by counsel for Thomas Cruse, is unwarranted because the invalidity of the repealing Act is apparent on its face, in that the title of it, as enacted and approved by the governor, contained no reference to section 3657, and was therefore obnoxious to the provisions of section 23, Article V, of the Constitution, which declares: "No

bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject which shall be clearly expressed in its title; but if any subject shall be embraced in any Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed." Section 3657 reads as follows: "When a divorce is granted for any of the causes mentioned in section 3643, the innocent party cannot marry until after the expiration of two years, and the guilty party cannot marry until after the expiration of three years from the entry of the judgment of divorce; but this section shall not prevent the parties to the action for a divorce from remarrying each other at any time."

To a proper understanding and decision of the question presented, a brief statement of the history of the legislation is necessary. The Code Commission created by the Act of the territorial legislature approved March 14, 1889 (Laws 16th Sess. p. 116), filed with the secretary of state on February 4, 1892, the result of its labors in the form of four Codes, which, with amendments thereto, were adopted by the fourth legislative assembly, as the Civil Code, Code of Civil Procedure, Penal Code and Political Code, and were published as the Codes of 1895. When the assembly convened in January, 1895, it at once became a question what course should be pursued by it in adopting these Codes. The plan recommended by the Code Committee was to enact each Code as a whole by a separate bill with certain excepted provisions, and thereafter to enact such amendments by separate bills as might be deemed necessary (House Journal, p. 115); and this plan was adopted and pursued. House Bill 36, to establish a Civil Code, was introduced on January 17 (House Journal, p. 86). It was finally adopted on February 19 (House Journal, p. 280), and approved by the governor on the same day. The Parts, Divisions, Titles, Chapters, Articles, and section numbers, except certain sections which had been stricken out, remained as they were when the Code was reported by the Commission. By its own terms, the

Code was to become effective on July 1, 1895.   On February 1, House Bill 142 was introduced, entitled: "An Act to amend sections 90, 95, 110 and 112 of the Civil Code of the state of Montana." This was approved and became a law on March 6. It consisted of two sections. The first re-enacted sections 90, 95, and 112, as amended; the second provided: "Sec. 2. That section 91 of the Civil Code of the state of Montana is hereby repealed." Section 91, it will be observed, is not mentioned in the title. Section 110 is not anywhere mentioned in the body of the bill. Amended sections 90, 95, and 112 found their way into the Code as finally published, under the section numbers 145, 160, and 177, and appear in the Revised Codes as sections 3656, 3658, and 3675. Section 110 appeared in the Code of 1895 as section 175, and is section 3673 of the Revised Codes. All of these sections relate to the subject of divorce. The commissioner provided for by the same legislative assembly to compile and codify the general laws enacted by the third and fourth legislative assemblies, to arrange the same in proper form and to insert their various provisions in the several Codes in their appropriate places, being of the opinion that section 91, *supra,* had not been repealed, because not mentioned in the title of the bill, brought it forward into the Codes as section 146, and it appears in the Revised Codes as section 3657.

It was said by this court, in considering the validity of another statute enacted at the same session of the legislature, the title of which was similarly defective: "The task of the fourth legislative assembly was a most arduous one. It was essentially a session of codification and general revision of all the laws of the state, both those which had been carried forward from the session Acts of the territory, and those which had been enacted at the third session of 1893." (*In re Ryan,* 20 Mont. 64, 50 Pac. 129.) This statement is amply justified by the brief history of the course of legislation during the sitting of that assembly, and the plan adopted to accomplish the task before it. Recognizing the impossibility of considering section by section the four Codes, consisting of some 10,000 sections, within the sixty

days allotted to it under the Constitution in which to complete its work, it was compelled to adopt some more practicable and expeditious plan to secure their adoption. The plan adopted, though anomalous, is not obnoxious to any express or implied provision of the Constitution so far as we are advised. It cannot be doubted that a single bill having for its purpose a revision by amendment of all the Codes, simply mentioning in its title the sections intended to be revised by amendment, would have been a general revision measure. By the very terms of the section of the Constitution, *supra*, it would not have been objectionable, because that character of bill falls clearly within its exception. But for the provision, a bill of any description enacted without any title is valid. (*Lane* v. *Commissioners of Missoula County*, 6 Mont. 473, 13 Pac. 136; Cooley on Constitutional Limitations, 202.) The prohibition is aimed at ordinary legislation with the subject of which the members of the legislative body and the public are not supposed to be familiar. Its purpose is: ''First, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.'' (Cooley on Constitutional Limitations, 205.)

The obvious reason for the exception of appropriation bills and bills for the codification and general revision of the laws is that the first are necessary for the maintenance of the government, and hence their validity ought not to be open to question for informality; and the latter are so extraordinary in their character that both the members of the legislative body and the public are presumed to know what is being done. Furthermore, it would be impracticable to formulate a title which would

cover every subject embraced in such a bill. In any event, a bill of either class does not fall within the prohibition.*)* Can it be maintained that an *omnibus* revision bill covering all the Codes, or a similar bill covering any one of them, would have. been within the exception, while a bill the plain purpose of which was to revise the laws upon a particular subject found in any of them, is not? We think not. In view of the plan of procedure adopted at the outset and consistently pursued throughout the session to accomplish a definite result, *viz.*, the adoption of the Codes, with such amendments as were deemed necessary and advisable to render them harmonious and consistent with each other, and to eliminate conflicts which existed between many of their provisions and other Acts of the legislature which it was designed to preserve and keep in force, we think that the separate bills, the obvious purpose of which was to revise and harmonize or amend the laws on particular subjects, should be regarded as revisionary in character and be held to fall within the exception also. Of such a character was House Bill 291, enacted at the same session of the legislature, the validity of which was drawn in question in *In re Ryan, supra.* Its title indicated that the purpose of it was to revise, by way of amendment, numerous sections of the Political Code then in the course of enactment by the legislature, and other laws theretofore enacted relating to municipal corporations. In the body of it was a provision amending section 3466 of that Code, but there was no mention of this section in the title. The validity of it was upheld on the ground that, since its title sufficiently disclosed its purpose to be a revision of the laws relating to municipal corporations, the omission to mention in the title the amended section might be treated as a clerical oversight. While the decision is put upon the ground that the title sufficiently indicated the purpose of the bill, the fact that its purpose was a general revision of the laws on the particular subject evidently had great weight in inducing the court to the conclusion it reached.

It must be borne in mind that the Act in question was introduced and was on its passage at the same time the Code itself was under consideration. The title so far as it expressed the subject was not misleading. Indeed, it was in a sense legislation being considered concurrently with that embodied in the Code, intended to become a substantial part of it and to become operative at the same time the Code itself went into effect, *viz.*, on July 1, 1895. It would never have become operative unless the Code itself had been adopted. For the reason that the bill was introduced as a part of the general plan of codification and revision in hand, we think it should be classed under the head of revisionary legislation on the subject of divorce, and to fall within the exception of the Constitution applicable to such legislation, and as not rendered invalid by the apparent defect in its title.

If we entertained any doubt upon the subject, we would **[5]** incline to uphold the legislation for this reason: Soon after the Code went into effect, the question arose as to whether section 3657, *supra,* was operative. The attorney general of the state was of the opinion that it had been effectively repealed by the Act in question, and so instructed the county attorneys throughout the state. His successors in office have been of the same opinion, all having given written opinions to that effect. For this reason the county attorneys have refrained from instituting prosecutions for violations of section 495 of the Penal Code of 1895 (Rev. Codes, sec. 8358), and have advised the clerks in their respective counties that the prohibition found in section 3621 of the Revised Codes, is inoperative. The result is that many marriages have been contracted during the nineteen years intervening since the adoption of the Codes of 1895, the validity of all of which, if we should reach a contrary view of the law, would be brought in question. The legitimacy of a multitude of children born of such marriages during these years would be rendered doubtful, and the titles vested in them under the laws of succession would at once become the subject of controversy. While such

considerations as these should not deter a court from declaring the law as it finds it, nevertheless in a doubtful case it would hesitate to announce a conclusion that would entail such consequences.

Counsel for respondents cite the case of *State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100, as directly in point in support of their contention. .The title of the Act there in question was unintelligible and misleading because its purpose as expressed in the title was to amend a Chapter of the Penal Code relating to gaming which had been stricken from the bill to establish that Code, and was not a part of it when it was finally adopted and approved by the governor. There was not, therefore, before the legislature at that time anything which could be the subject of amendment. This, it seems, was a sufficient reason to invalidate the Act. Be that as it may, under the circumstances the Act could not have been sustained upon any other theory than that it was a piece of independent legislation dealing with the subject of gaming, and hence did not fall within the exception in favor of revisionary legislation. For these reasons we do not think the case in point.

In the foregoing discussion we have assumed that if section 3657, *supra,* were operative, it would render void any marriage falling within its prohibition. Since we have reached the conclusion that it was repealed by House Bill 142, *supra,* it is not necessary to determine whether it would have had this effect or would have rendered such marriage voidable only.

From the foregoing the conclusion follows that the marriage between the relator and deceased was valid, and that as the surviving husband he is *prima facie* entitled to be considered first by the court in the selection of a competent person to act as special administrator. There is scarcely any evidence in the record of a substantial character tending to show that he is incompetent by reason of his improvident habits. It is apparent, however, that the district judge denied his application and made the order of appointment as it did, upon the theory that the marriage was void, and that relator is not eligible for this

reason.   The question whether he is not eligible because of improvidence was thus not considered nor determined.   We shall not undertake to make a finding in this behalf, and decide finally that he is entitled to the appointment, but leave this question for decision by the district court.

The order is therefore annulled, with direction to the district court to grant the petition of relator, unless, from the evidence taken or which may be taken at a further hearing, it is found that he is incompetent because of improvidence.   In this event the court will appoint some suitable and competent person selected by the relator, or in default of such selection, the peti· tioner Thomas Cruse.

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.