## LEWIS AND CLARK COUNTY, Respondent, *v.* INDUSTRIAL ACCIDENT BOARD, Appellant.

### (No. 3,783.)

### (Submitted January 3, 1916. Decided January 27, 1916.)

### [155 Pac. 268.]

*Counties—Workmen's Compensation Act—Applicability—Constitution.*

Counties—Workmen's Compensation Act—Constitution—Sufficiency of Title.
1. *Held*, that the Workmen's Compensation Act (Chap. 96, Laws 1915) applies to counties and county employees, the contention that its title is insufficient to warrant their inclusion in the body of the measure, under section 23, Article V, of the Constitution, being untenable.

Same—Constitution—Class Legislation—Donations.
2. *Held*, further, that the Act above, as applied to county employees, is neither obnoxious as class legislation, nor in violation of the constitutional prohibition against donations to individuals.

Same—Taxation—"Public Purpose"—Constitution.
3. The question whether a particular purpose for which taxes may be levied and collected is a public one, under section 11, Article XII, Constitution, is for the legislature in the first instance, and courts will indulge every reasonable presumption in favor of the legislative decision in this respect.

Same.
4. Taxes levied to provide a fund to be devoted to the relief of injured employees of a county which is subject to the provisions of the Workmen's Compensation Act, *held* to be for a public purpose, and therefore not obnoxious as offending against the provision of section 11, Article XII, of the Constitution.

[As to which is "injury" or "personal injury" within meaning of Workmen's Compensation Act, see note in **Ann. Cas. 1915C, 921.**]

---

On the question of constitutionality of statute rendering master liable for injury to servant irrespective of negligence, see note in 34 **L. R. A.** (n. s.) 162.

And as to the constitutionality of the workmen's compensation statute, see note in **L. R. A.** 1916A, 23.

*Appeal from District Court, Lewis and Clark County; R. Lee Word, Judge.*

PROCEEDINGS under the Workmen's Compensation Law by Lewis and Clark County against the Industrial Accident Board. From the judgment rendered, the board appeals. Affirmed.

*Mr. J. B. Poindexter,* Attorney General, and *Mr. C. S. Wagner,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Wagner* argued the cause orally.

*Mr. A. H. McConnell* and *Mr. Joseph P. Donnelly,* for Respondent, submitted a brief; *Mr. Donnelly* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This appeal presents the question: Do the provisions of the Workmen's Compensation Law (Chapter 96, Laws 1915) apply to counties and county employees? The trial court answered the inquiry in the affirmative, and the Industrial Accident Board appealed.

By specific legislative declarations contained in sections 3(e), 6(gg) and 6(i), counties and county employees are made subject to the terms of the Act, but it is the contention of [1] counsel for appellant that those provisions are to be disregarded as without force or validity, because the title to the Act is not sufficiently comprehensive to warrant their inclusion in the body of the measure.

Section 23, Article V, of the Constitution, provides: "No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject which shall be clearly expressed in its title; but if any subject shall be embraced in any Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed." Beginning with *Hotchkiss* v. *Marion,* 12 Mont. 218, 29 Pac. 821, 823, and continuing down to *State ex rel. Cotter* v. *District*

*Court,* 49 Mont. 146, 140 Pac. 732, this court has repeatedly considered and defined the purposes and limitations of this section of the Constitution, and they need not be restated here. The title to Chapter 96, above, is as follows: ''An Act providing for the protection and safety of workmen in all places of employment and for the inspection and regulation of places of employment in all inherently hazardous works and occupations; providing a schedule of compensation for injury to or death of workmen and methods of paying the same, and prescribing the liability of employers who do not elect to pay such compensation; establishing the industrial accident board, defining its powers and duties; and providing for a review of its awards.''

It may be conceded at once that counties and county employees are not included, *eo nomine,* in this title; and we agree with counsel that general legislation is intended primarily for the subjects and not for the sovereign, and that the rules of statutory construction require that we enter upon our investigation of the meaning and purpose of a legislative enactment, indulging the presumption that the lawmakers intended to legislate upon the rights and affairs of individuals, and that the state or the public will not be deemed to be within the purview of such enactment, unless expressly named or included by fair implication. In their brief, counsel for appellant say: ''Theorize as we will, Compensation and Employer's Liability Acts are nothing more or less than substitutes for, and intended to supplant, the recognized unsatisfactory and ofttimes disappointing and uncertain common-law and statutory tort remedies which furnished the only legal haven of refuge for an injured employee.'' At the time Chapter 96 was enacted a county of this state was not liable for damages to its injured employee, and therefore, if counsel are correct in their analysis of the purpose of this Act, it would seem to be a justifiable conclusion to be reached by anyone entertaining the same view and considering the title of this Act only, that it was never intended to subject counties or county employees to its provisions. But that counsel has misconceived the object and purpose of the

Act is quite patent when the history of this character of legislation is considered.

Liability and compensation statutes are not to be grouped together. They are the antipodes of labor legislation, having their foundation in essentially different social and economic ideas.

The common law of England and America and the Civil Code of continental Europe furnished but a single remedy for a servant's injury—an action for damages in which it was made to appear that the negligence of the master was a proximate cause of the injury. The harshness of the rule was emphasized when there was ingrafted on it the defenses of contributory negligence (*Butterfield* v. *Forrester,* 11 East, 60), fellow-servant's negligence (*Priestly* v. *Fowler,* 3 Mees. & W. 1; *Murray* v. *South Carolina R. R. Co.,* 1 McMull. (S. C.) 385, 36 Am. Dec. 268), and assumption of risk (*Farwell* v. *Boston & Worcester R. R. Co.,* 4 Met. (Mass.) 49, 38 Am. Dec. 339; *Laning* v. *New York C. R. R. Co.,* 49 N. Y. 521, 10 Am. Rep. 417). With the increased hazards consequent upon the use of high explosives, complicated and dangerous machinery, and the powerful agencies of steam and electricity, the percentage of injured employees having justiciable claims rapidly decreased, until relief was sought in liability statutes which modified or eliminated some or all of the common-law defenses. But whether the remedy was sought at common law or under an employers' liability statute, the actionable wrong of the master, or actionable wrong for which the master was liable under the maxim *respondeat superior,* was the gist of the claim for damages and the basis of any right to recover. Experience demonstrated that more than one-half of all industrial injuries resulted from inevitable accident or from the risks of the business for which no one could be held responsible; that neither the common law nor employers' liability statutes furnished any measure of relief to more than twelve or fifteen per cent of the injured, and that further appreciable improvement from the modification of existing laws could not be expected so long

as the element of negligence was the foundation of legal liability.

Workingmen's Insurance and Compensation Laws are the products of the development of the social and economic idea that the industry which has always borne the burden of depreciation and destruction of the necessary machinery, shall also bear the burden of repairing the efficiency of the human machines without which the industry itself could not exist. The economic loss from vocational disease, industrial accident, invalidity, old age and unemployment was a subject of serious inquiry among the constituent German states before the days of the empire, but the credit for crystallizing the sentiment into workable laws will always remain with Bismarck. From the enactment of the sick insurance statute in Germany in 1883, and the fundamental law in 1884, the idea of compensation based only upon the risks of the business and the impairment of earning efficiency spread to other European states, and finally penetrated to this country. The federal government, thirty-one states, Alaska, Hawaii and the canal zone now have measures for the relief of injured workmen patterned after the German insurance or English compensation plan. Each system seeks the same ultimate end, but by somewhat different means, and "workmen's compensation" is a term sufficiently comprehensive for all practical purposes to include both. The fundamental difference between the conception of liability and compensation is found in the presence in the one, and the absence from the other, of the element of actionable wrong. The common-law and liability statutes furnished an uncertain measure of relief to the limited number of workmen who could trace their injuries proximately to the master's negligence. Compensation laws proceed upon the theory that the injured workingman is entitled to pecuniary relief from the distress caused by his injury, as a matter of right, unless his own willful act is the proximate cause, and that it is wholly immaterial whether the injury can be traced to the negligence of the master, the negligence of the injured employee or a fellow-servant, or

whether it results from an act of God, the public enemy, an unavoidable accident, or a mere hazard of the business which may or may not be subject to more exact classification; that his compensation shall be certain, limited by the impairment of his earning capacity, proportioned to his wages, and not dependent upon the skill or eloquence of counsel or the whim or caprice of a jury; that as between workmen of the same class who suffer like injuries, each shall receive the same compensation, and that, too, without the economic waste incident to protracted litigation and without reference to the fact that the injury to the one may have been occasioned by the negligence of the master, and to the other by reason of his own fault.

Confronted with a legislative history covering more than thirty years and extending to practically all of Europe, to many of the Europeans dependencies, and to more than one-half of the United States, the members of the legislative assembly of 1915 must be credited with an understanding of compensation measures as they were generally understood at that time, and with an intention to employ terms appropriate to such measures as they were generally employed under like circumstances. In drafting this measure and formulating a title for it, we must assume that the members of the legislative assembly appreciated the fact that they were departing from the rule of liability in favor of the few, to establish a rule of compensation for injured workmen generally—one which would insure relief without reference to the question of fault and altogether irrespective of whether, under existing laws, actions for damages would lie. They therefore employed the term ''workmen'' in the title to this Act, in its generic sense and intended thereby to include the employees of a county, as well as the servants of individuals or private corporations engaged in the extrahazardous occupations enumerated in the Act. Since the title selected ''fairly indicates the general subject of the Act, is comprehensive enough in its scope reasonably to cover all the provisions thereof, and is not calculated to mislead either the legislature or the public,'' it must be held to be sufficient to meet the requirements of the

Constitution above.  (*Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462.)   For the history of industrial insurance and workmen's compensation legislation, reference may be had to 24th Annual Report of U. S. Commissioner of Labor 1909, and to Boyd's Workmen's Compensation.

We are unable to appreciate much of counsel's argument in [2] support of the contention that this statute is open to the objection that it is obnoxious class legislation.   In the absence of any restriction in the Constitution, the legislature was free to establish a measure of duty owing to a public employee different from that owing to a citizen who is not in the public service, and it cannot be contended that a classification of workmen based upon the risks of their employment is either arbitrary or unreasonable.   If the compensation to be paid to an employee injured in the service of the county is to be treated as charity under an assumed name, then it might be conceded that this measure conflicts with the provisions of section 1, Article XIII, of the Constitution; but that is not the conception of compensation statutes.

A county subject to the provisions of this Act will, of necessity, be compelled to levy taxes to meet the assessments made [3] upon it under section 40, and this cannot be done unless the purpose to which the money so raised is to be devoted is a public purpose.   Section 11, Article XII, of the Constitution, provides: "Taxes shall be levied and collected by general laws [4] and for public purposes only."   Whether a particular purpose is "public," as that term is employed above, is not always easy of solution.   The power of taxation is a legislative prerogative, and therefore the determination of the question whether a particular purpose is or is not one which so intimately concerns the public as to render taxation permissible is for the legislature in the first instance.   (37 Cyc. 720; *State* v. *Nelson County,* 1 N. D. 88, 26 Am. St. Rep. 609, 8 L. R. A. 283, 45 N. W. 33; 1 Cooley on Taxation, 182.)   The general rule of constitutional law that courts will indulge every reasonable presumption in favor of legislation is applicable with peculiar force to the case

of a legislative decision upon the purpose for which a tax may be laid. (1 Cooley on Taxation, 185.) In sections 3(e) and 6(gg) of this Act the legislature has determined that the money to be contributed by a county to the fund for the relief of its injured employees is to be devoted to a public purpose—an ordinary and necessary county expense. In *Cunningham* v. *Northwestern Imp. Co.*, 44 Mont. 180, 119 Pac. 554, we held that a statute which in effect levied a tax upon the coal mining industry to provide an insurance fund for injured miners was a valid exercise of the taxing power, and that the purpose sought to be subserved was a public purpose, within the meaning of section 11 above. It is unnecessary to again review the authorities which support that conclusion. We are satisfied with its correctness, and that the determination of the question in that case is decisive of it in this.

The judgment of the district court is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.