STATE, Appellant, *v.* DRISCOLL, Respondent.

(No. 7,472.)

(Submitted January 13, 1936.   Decided January 31, 1936.)

[54 Pac. (2d) 571.]

350

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Oscar A. Provost,* Assistant Attorney General, for the State, submitted an original and a reply brief; *Mr. Provost* argued the cause orally.

*Mr. George T. Toole, Messrs. Toomey & McFarland* and *Mr. John W. Chapman,* for Respondent, submitted a brief; *Mr. Toole* and *Mr. E. G. Toomey* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

An information was filed in the district court of Silver Bow county charging the defendant with unlawfully exposing and keeping for sale intoxicating liquor. The information, other than the name of the defendant and the description of the place where the crime was alleged to have been committed, was in the language of subsection 1, of section 45, of Chapter 105 of the Laws of 1933, as amended by section 1 of Chapter 166 of the Laws of 1935. To this information the defendant filed a demurrer which was by the court sustained. Thereafter, a judgment of dismissal was entered. The state has appealed from this judgment.

The demurrer challenged the sufficiency of the information on the ground that it did not state a public offense, and also that the court was without jurisdiction, in that a misdemeanor was charged which was within the exclusive jurisdiction of the justice court, and that the information was uncertain and unintelligible. The court in sustaining the demurrer did not indicate the ground or grounds which formed the basis of its ruling.

By the provisions of section 2 of Chapter 166, Laws of 1935, original jurisdiction is conferred on the district court in all criminal actions for violations of Chapter 105, Laws 1933. Prior to this amendment the justice court had exclusive jurisdiction. (*State* v. *Wiles*, 98 Mont. 577, 41 Pac. (2d) 8.)

In support of the contention that the information is uncertain and ambiguous, it is said it does not apprise the defendant with sufficient particularity as to the nature of the offense with which he is charged, in that it does not describe the particular kind of liquor which was in his possession and offered for sale, nor to whom he exposed it for purposes of sale.

In the case of *State* v. *Shannon*, 95 Mont. 280, 26 Pac. (2d) 360, 362, we said: ''The defendant contends that he was entitled to be advised as to what particular articles he unlawfully possessed, to the end that he might properly prepare his defense. Courts generally hold that an information is sufficient when it literally or substantially follows the language of the statute. (15 C. J. 367.) The modern tendency of criminal procedure has been distinctly towards simplification.'' If the information was too general in character to advise the defendant as to what he had to meet on the trial of the case, he had a plain remedy available. (*State* v. *Shannon*, supra; *State* v. *Redmond*, 73 Mont. 376, 237 Pac. 486.)

It is argued that the information fails to state a public offense, in that it is asserted that many of the provisions of Chapter 105 are violative of certain constitutional provisions which, by reason of the alleged unconstitutional provisions of the Act being inseparable from the remaining portions of the Act, render the chapter in its entirety unconstitutional and void.

It is first contended that the title to the Act is violative of section 23, Article V of our Constitution, which provides as follows: ''No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any

Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed."

The title of the Act reads as follows: "An Act to Limit, Regulate and License the Manufacture and Sale of Any and All Liquors or Beverages That May Hereafter be Manufactured, Sold or Dispensed in the State of Montana." It is contended by counsel for the defendant that the Act in question contains subjects which are not clearly expressed in its title. Part I of the Act (sec. 4 et seq.) creates the Montana Liquor Control Board, which has the administration of the Act. By section 8 and its subsections this board is given power to obtain, possess, and sell liquor, to lease and acquire property necessary for that purpose, to employ vendors and other necessary employees, and to grant and revoke licenses and permits as provided in the Act. By section 9 the board is authorized to make regulations not inconsistent with the Act for carrying out its provisions, and numerous subjects of regulation, or possible regulation, are therein enumerated.

Part II of the Act, sections 10 to 36, inclusive, contains the provisions for the establishment of state liquor stores, their location, hours of business, establishment of prices, sales by vendors and conditions under which sales may be made, type of containers required, prohibition of consumption on the premises, closing of state stores on certain days, and the transportation of liquor to and from stores. Provision is also made for the sale and issuance to individuals of permits, the fees to be charged therefor, the places where liquor bought under permits may be kept and used, proceedings for the suspension or revocation of permits, and the means of restoring lost or suspended permits. Provision is made for the granting of beer licenses to clubs not operated for profit, and the suspension or revocation of their licenses. Provision is also made for permits to purchase liquor and disposition of the same by druggists, physicians, dentists, veterinarians, etc.

Part III, sections 37 to 44, inclusive, relates to a local option law, and provides that upon petition of the required number

of voters of the county an election must be called to determine whether intoxicating liquors shall be sold in the county. The method, time, place and holding of the election and contests of the same are among the provisions of this part of the Act.

Part IV, sections 45 to 90, inclusive, relates to prohibitions, interdictions, penalties and procedure in prosecutions and on appeal. It enumerates certain things which are prohibited, among them the acts under which this information is drawn.

Part V, sections 91 to 98, inclusive, relates to the ownership of property acquired by the board, financing and accounting by the board, and the application of profits.

Part VI (secs. 99–104) contains certain general provisions stating the purpose of the Act, the powers of officers to administer oaths, the power of the board to incur indebtedness not exceeding $25,000, the time when the Act shall go into effect, and penalty for violation of the provisions of the Act.

It is contended on behalf of the defendant that the title is silent in the following particulars: (1) That it makes no reference to a liquor control board; (2) the matter of the state hiring persons to buy and sell liquor in the name of the state; (3) the leasing or establishing and operation of state liquor stores; (4) the control of any individual in his purchase or consumption of liquors by the permit system, and the provisions for interdiction; and (5) the accrual of profits from liquor sales.

In the case of *State ex rel. Normile* v. *Cooney,* 100 Mont. 391, 47 Pac. (2d) 637, 644, it is written: ''The purpose of section 23, Article V, so far as it provides that the subject shall be clearly expressed in the title of an Act, was stated by this court in the case of *State ex rel. Cotter* v. *District Court,* 49 Mont. 146, 140 Pac. 732, 734, as follows: 'The prohibition is aimed at ordinary legislation with the subject of which the members of the legislative body and the public are not supposed to be familiar. Its purpose is: ''First, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and care-

lessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.'' (Cooley Const. Lim., p. 205.)' This statement is quoted with approval in the case of *State ex rel. Bonner* v. *Dixon,* 59 Mont. 58, 195 Pac. 841.''

By this constitutional provision it is intended that the Act shall be germane to the subject expressed in the title. (*Arps* v. *State Highway Commission,* 90 Mont. 152, 300 Pac. 549, 557; *State* v. *Anaconda Copper Min. Co.,* 23 Mont. 498, 59 Pac. 854, 855.) ''Germane'' means in close relationship, appropriate, relevant, pertinent. (*State ex rel. Normile* v. *Cooney,* supra; *Durland* v. *Prickett,* 98 Mont. 399, 39 Pac. (2d) 652, 656; *State ex rel. Nagle* v. *Leader Co.,* 97 Mont. 586, 37 Pac. (2d) 561; *Hale* v. *Belgrade Co.,* 74 Mont. 308, 240 Pac. 371.) It is not necessary that the title shall embody the exact method of application or procedure where the general object is plainly expressed. (*Arps* v. *State Highway Commission,* supra; *Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462.) Where the degree of particularity necessary to be expressed in the title of the Act is not indicated by the Constitution itself, as here, the courts should not embarrass legislation by technical interpretations based on mere form or phraseology. (*Arps* v. *State Highway Commission,* supra; *State* v. *Anaconda Copper Min. Co.,* supra; *Evers* v. *Hudson,* supra.) The test is whether the title is of such a character as to mislead the public or members of the legislature as to the subject embraced in the Act. (*Arps* v. *State Highway Commission,* supra; *Evers* v. *Hudson,* supra.) The court has no right to hold the title void because in its opinion a better one might have been used. (*Arps* v. *State Highway Commission,* supra; *State* v. *McKinney,* 29 Mont. 375, 74 Pac. 1095, 1 Ann. Cas. 579.) ''The title is generally sufficient if the body of the Act treats only, directly or indirectly, of the subjects mentioned in the title, and of other subjects germane thereto, or of mat-

ters in furtherance of or necessary to accomplish the general subjects of the bill, as mentioned in the title. Details need not be mentioned." (*Arps* v. *State Highway Commission*, supra; *State* v. *McKinney*, supra; *Barbour* v. *State Board of Education*, 92 Mont. 321, 13 Pac. (2d) 225; *State ex rel. Boone* v. *Tullock*, 72 Mont. 482, 234 Pac. 277.)

In the case of *State* v. *Anaconda Copper Min. Co.*, supra, it was said: " 'The objections should be grave, and the conflict between the statute and the constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or, if but one object, that it was not sufficiently expressed by the title.' (*Montclair* v. *Ramsdell*, 107 U. S. 147, 155, 2 Sup. Ct. 391, 27 L. Ed. 431; *Powell* v. *Supervisors of Brunswick County*, 88 Va. 707, 14 S. E. 543.) " (*Evers* v. *Hudson*, supra.)

In the case of *Durland* v. *Prickett*, supra, we said: "The question as to what is germane to a subject is one of fact, rather than law, and there can be no clear line of demarcation between those matters which fall within, and those which fall without, the inhibition of the constitutional provision." (*Hale* v. *Belgrade Co.*, supra.)

In the case of *State ex rel. Tipton* v. *Erickson*, 93 Mont. 466, 19 Pac. (2d) 227, 228, this court declared: "In the determination of the question of the constitutionality of any Act, a statute, if possible, will be construed so as to render it valid. (*Hale* v. *County Treasurer*, 82 Mont. 98, 105, 265 Pac. 6.) It is presumed to be constitutional, and all doubts will be resolved in favor of its validity if it is possible so to do. (*State ex rel. Toomey* v. *State Board of Examiners*, 74 Mont. 1, 238 Pac. 316, 320.) The invalidity of a statute must be shown beyond a reasonable doubt before the court will declare it to be unconstitutional. (*Herrin* v. *Erickson*, 90 Mont. 259, 2 Pac. (2d) 296.) And a statute will not be held unconstitutional unless its violation of the fundamental law is clear and palpable. (*Hill* v. *Rae*, 52 Mont. 378, 158 Pac. 826, L. R. A. 1917A, 495, Ann. Cas. 1917E, 210.) "

This court has frequently held that where it is sought to regulate a particular business by law and to put a statute regulating it into effective and practical operation, there must be punishments prescribed and imposed on those who violate its commands, but such penalties need not be included in the title if they are but the end and means necessary or convenient for the accomplishment of the general object. (*State* v. *Bernheim,* 19 Mont. 512, 49 Pac. 441; *Snook* v. *Clark,* 20 Mont. 230, 50 Pac. 718; *In re Terrett,* 34 Mont. 325, 86 Pac. 266.)

It was held in *Lewis & Clark County* v. *Industrial Accident Board,* 52 Mont. 6, 155 Pac. 268, L. R. A. 1916D, 628, that counties and county employees were within the provisions of the Workmen's Compensation Act, although they were not mentioned in the title of the Act. The omission of license fees from the title of an Act seeking to regulate a business or occupation does not render it vulnerable to the contention that the title does not clearly express the subjects mentioned in the Act. (*State* v. *McKinney,* supra; *State* v. *Pepper,* 70 Mont. 596, 226 Pac. 1108.) Other cases which illustrate the application of this constitutional provision where the titles of various Acts have been held to be sufficient as against a similar assault, are *State* v. *Healow,* 98 Mont. 177, 38 Pac. (2d) 285; *Miller Insurance Agency* v. *Porter,* 93 Mont. 567, 20 Pac. (2d) 643; *State ex rel. Souders* v. *District Court,* 92 Mont. 272, 12 Pac. (2d) 852; *Kline* v. *Murray,* 79 Mont. 530, 257 Pac. 465; *State* v. *Hopkins,* 54 Mont. 52, 166 Pac. 304, Ann. Cas. 1918D, 956.

In the case of *Yegen* v. *Board of County Commrs.,* 34 Mont. 79, 85 Pac. 740, 741, the title of the Act provided: "An Act creating a state board of health, defining its powers and duties and providing for the compensation of its officers, and providing for the enforcement of the rules and regulations of said board." (Laws 1901, p. 80.) The Act included numerous provisions with reference to county boards of health. It was held that the provisions contained in that Act relating to county boards of health not being clearly expressed in the title, were void. During the course of the opinion it was observed: "If the Act

had been entitled 'An Act to protect the public health,' then it might have included local and county boards as subsidiary instrumentalities to accomplish the general purpose so declared."

The case of *Russell* v. *Chicago etc. Ry. Co.*, 37 Mont. 1, 10, 94 Pac. 488, 501, involved the title to an Act to amend certain enumerated sections of the Code describing them by number and their location in the Code, relating to bonds of officers and other bonds. The portion of the Code sought to be amended dealt exclusively with official bonds and undertakings of officers of the court, such as receivers, executors, administrators, and the like. Provisions were included in the Act itself relating to bonds on appeal. It was held that the latter provision was invalid as being violative of this section of the Constitution.

In the case of *State ex rel. Foot* v. *Burr*, 73 Mont. 586, 238 Pac. 585, the title of the Act was to amend two sections of the Code relating to changing the boundaries of Fergus and Judith Basin counties. The effect of certain provisions of the Act was to include within the boundaries of Fergus county all of the territory embraced within the county of Petroleum. That portion of the Act seeking to include Petroleum county as within the boundaries of Fergus was held to be void.

In the case of *Hale* v. *Belgrade Co.*, supra, the title of the Act was as follows: "An Act to amend section 9746 of the Revised Codes of Montana of 1921, relative to the authentication of copies of appeals to the supreme court and concerning abbreviated records on appeal to the Supreme Court of Montana." (Laws 1925, Chap. 19.) Included within the Act was a limitation on the time within which a transcript on appeal might be filed. It was held that this subject was not clearly expressed within the title, and such portion was invalid.

The title of the Act under consideration is to limit, regulate and license the manufacture and sale of intoxicating liquor. Applying the rules enumerated, supra, in the light of the previous decisions of this court reviewed above, all of these so-called hidden subjects were germane, relative and pertinent, to limiting and regulating the manufacture and sale of intoxicating liquor.

We, therefore, conclude that the Act does not offend against section 23 of Article V of the Constitution.

It is contended that Chapter 105, Laws 1933, is invalid under ▇▇▇▇▇ section 1, Article XII of the Constitution, in that it provides revenue for the support and maintenance of the state by means other than the taxation of property or a license tax. It is argued that this is the result which obtains when we read the section in question together with section 29, Article III of the Constitution, which provides that the provisions of the Constitution are mandatory and prohibitory unless by express words they are declared to be otherwise. It is said in support of this contention that, in construing the two sections of the Constitution together, the rule *"Inclusio unius est exclusio alterius"* applies, and therefore the legislature is powerless to provide any other methods of taxation or means of raising revenue aside from the systems mentioned in section 1 of Article XII.

This court has heretofore by its decisions declined to accept this construction. (*Gelsthorpe* v. *Furnell*, 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170; *O'Connell* v. *State Board of Equalization*, 95 Mont. 91, 25 Pac. (2d) 114; *Mills* v. *State Board of Equalization*, 97 Mont. 13, 33 Pac. (2d) 563.) However, the results in those cases apparently have not convinced counsel, and we are again confronted with a similar contention and now propose, if possible, to settle this same contention so that it will not again recur.

This court in construing certain provisions of the Constitution in certain instances applied the rule of *"Inclusio unius est exclusio alterius."* In the case of *State* v. *Helena Waterworks Co.,* 43 Mont. 169, 115 Pac. 200, the court was considering the extent of its powers to assume original jurisdiction. Attention was directed to the fact that section 2 of Article VIII of the Constitution provided that this court, except as otherwise provided in the Constitution should have appellate jurisdiction only, and that in section 3 of the same Article certain proceedings are enumerated in which original jurisdiction was vested in this court. The court held that in view of the provisions of section

29 of Article III, construed with sections 2 and 3 of Article VIII, this court is limited in its original jurisdiction to the proceedings specifically mentioned in section 3.

In the case of *State ex rel. Pierce* v. *Gowdy*, 62 Mont. 119, 203 Pac. 1115, the legislature had enacted a bachelors' tax law which provided that the tax should be paid by those persons coming within the provisions of the Act into the county treasury. It was there held that while section 4 of Article XII of the Constitution prohibits the levy of taxes on the inhabitants of counties for county purposes, it authorizes the legislature to invest the corporate authorities with the power to levy taxes, and that the Act there in question was invalid in view of section 29 of Article III, supra.

In the case of *In re Weston*, 28 Mont. 207, 72 Pac. 512, this court had under consideration an Act of the legislature providing in cases of disqualification of district judges that a party to the proceeding might petition this court and secure an order calling in another judge to try the cause. The Act was held to be in conflict with numerous constitutional provisions, among others the provisions of section 12 of Article VIII, which provides that any judge of the district court may hold court for any other district judge. Thus, if the Act in question had been permitted to stand, a disqualified judge might have called in one district judge and the supreme court might have ordered a second one to appear and assume jurisdiction. Manifestly the Act was contrary to the provisions of section 12, supra, and the court held in view of section 29 of Article III that the Act did violate section 12 of Article VIII. The court in these cases applied the rule *"Inclusio unius est exclusio alterius."* However, that rule is but a rule of interpretation, and not a constitutional command. (*State* v. *State Board of Equalization*, 56 Mont. 413, 185 Pac. 708, 186 Pac. 697; *Mills* v. *State Board of Equalization*, supra; *State ex rel. Normile* v. *Cooney*, supra.)

It is argued that we have said in previous decisions that section 1 of Article XII provides two systems of raising money. (*State* v. *Camp Sing*, 18 Mont. 128, 44 Pac. 516, 517, 56 Am.

St. Rep. 551, 32 L. R. A. 635; *State ex rel. Diederichs* v. *State Highway Commission*, 89 Mont. 205, 296 Pac. 1033.) In the *Camp Sing Case* the court said: "The important question in this case is, what restraint, if any, is placed upon the legislature in creating a license system?" License systems are mentioned in that section. It was there argued that all of the provisions of limitation on the powers of the legislature in levying taxes on property were applicable to license taxes. It will thus be observed that the court there did not have under consideration the question of the power of the legislature to provide other means of taxation aside from taxation of property and license taxes. In the case of *State ex rel. Diederichs* v. *State Highway Commission*, supra, it was said that the principal contention made by the relator was that the provisions of the Act in question attempted to authorize the creation of a debt or liability in excess of $100,000 without submitting the law to the people, as required by section 2 of Article XIII of the Constitution. There was no question in that case before the court as to whether the legislature might provide some system of taxation other than a license system or a property system. The observations of this court in both cases with reference to section 1 of Article XII were preliminary to the treatment of the questions then at hand. It was not decided by either of these cases that the methods provided by section 1 of Article XII were exclusive. The court instead of stating that the provisions of section 1 of Article XII provided two methods of taxation, naming them, might as well, for the purposes of the opinion in view of the questions there to be determined, have said that the section mentioned referred to or alluded to two methods or systems of taxation.

It will be noted that in each of the three cases cited, supra, wherein this court has applied the rule of "*Inclusio unius est exclusio alterius*," some express provision of the Constitution was violated by the legislative enactment. In fact, this court in the case of *Evers* v. *Hudson*, supra, said: "Section 1, Article XI, is not a limitation upon the legislative power, but is a solemn

mandate to the legislature.'' It was not a case in either instance where by the mere mention of a subject in the Constitution the court held that all others of a similar class were excluded. The maxim being only a rule of interpretation and not a constitutional command, we now hold, as we have held in the past, that the two methods of taxation mentioned or provided for in section 1 of Article XII, are not exclusive, and that the legislature has the power to adopt other methods of taxation which are not prohibited by some other section of the Constitution. (*Gelsthorpe* v. *Furnell,* supra; *O'Connell* v. *State Board of Equalization,* supra; *Mills* v. *State Board of Equalization,* supra.)

Lastly, it is contended that the Act violates section 32 of Article V of the Constitution, which provides as follows: ''All bills for raising revenue shall originate in the house of representatives; but the senate may propose amendments, as in the case of other bills.'' It is conceded that Chapter 105 was a bill which originated in the senate. In the case of *State* v. *Bernheim,* supra, it was urged that an Act licensing agents to sell railroad and steamship tickets and providing for the issuance of a certificate setting forth the authority of the agent for which a license fee of $1 was charged was a revenue measure, and having originated in the senate, was violative of the above section of the Constitution. After observing that the Federal Constitution, section 7 of Article I, contains a like provision, the court, in reviewing the decisions of the United States courts and stating its conclusions, said:

''In the case of *United States* v. *Mayo,* 26 Fed. Cas. No. 15,755, page 1230, decided in 1813, Judge Story, in discussing liability for penalties under the Embargo Act, used this language: 'It is argued that the present is a case arising under the revenue laws of the United States, and that in an enlarged sense these words embrace all laws where any fine or forfeiture accrues to the government. I have no difficulty in rejecting this construction, as it would draw within its grasp every crime to which a pecuniary fine or forfeiture attaches by law, of what-

soever character it might be; and I might add that not a single law inflicting a forfeiture would escape its comprehensive power. The true meaning of "revenue laws" in this clause is such laws as are made for the direct and avowed purpose of creating and securing revenue or public funds for the service of the government. No laws whose collateral and indirect operation might possibly conduce to the public or fiscal wealth are within the scope of the provision. The argument on this head therefore utterly fails.'

"Story, years afterwards, in his treatise on the Constitution (section 880), again wrote as follows: 'What bills are properly "bills for raising revenue," in the sense of the Constitution, has been a matter of some discussion. A learned commentator supposes that every bill which indirectly or consequently may raise revenue is, within the sense of the Constitution, a revenue bill. He therefore thinks that the bills for establishing the postoffice and the mint, and regulating the value of foreign coin belong to this class, and ought not to have originated, as in fact they did, in the senate. But the practical construction of the Constitution has been against his opinion. And, indeed, the history of the origin of the power already suggested abundantly proves that it has been confined to "bills to levy taxes" in the strict sense of the words, and has not been understood to extend to bills for other purposes, which may incidentally create revenue. No one supposes that a bill to sell any of the public lands, or to sell public stock, is a bill to raise revenue in the sense of the Constitution. Much less would a bill be so deemed which merely regulated the value of foreign or domestic coins, or authorized the discharge of insolvent debtors upon assignments of their estates to the United States, giving a priority of payment to the United States in cases of insolvency, although all of them might incidentally bring revenue into the treasury.' This construction by Judge Story has been expressly approved by the Supreme Court in *United States* v. *Norton*, 91 U. S. 566, 23 L. Ed. 454. (See, also, *The Nashvlle*, Fed. Cas. No. 10,023, 4 Biss. 188.)

"Tested by these rules, we are clearly of the opinion that there is nothing in the context of the bill to justify the opinion that the motive of the legislature in passing it was to raise revenue for the state. The more general object of the law, as expressed by its provisions and title, was to regulate the sale of railroad and steamboat transportation, limiting the right of sale of tickets to those designated as agents of the carriers, to the end, doubtless, of preventing violation of agreements under which transportation companies often sell their tickets to original purchasers, and to prevent fraudulent practices upon the public as well, and to provide for the redemption of certain tickets or coupons by carriers. * * * The statute not being for revenue purposes, we regard it as a police regulation, adopted by the legislature in the exercise of the police power, and certainly not in conflict with the constitutional provision which the appellant says it violates."

In the case of *Evers* v. *Hudson,* supra, it was held that certain provisions of an Act to establish free county high schools which provide for taxes to support the schools and bond issues to raise money to establish them were merely incidental to the general purpose of the Act to maintain schools.

In the case of *Twin City National Bank* v. *Nebeker,* 167 U. S. 196, 17 Sup. Ct. 766, 769, 42 L. Ed. 134, which involved a tax on the national bank notes issued by the banks under the Act of Congress, it was said: "It is sufficient in the present case to say that an Act of Congress providing a national currency secured by a pledge of bonds of the United States, and which, in the furtherance of that object, and also to meet the expenses attending the execution of the Act, imposed a tax on the notes in circulation of the banking associations organized under the statute, is clearly not a revenue bill which the Constitution declares must originate in the House of Representatives. Mr. Justice Story has well said under the practical construction of the Constitution and the history of the origin of the constitutional provision in question proves that revenue bills are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue. (1

Story on Constitution, sec. 880.) The main purpose that Congress had in view was to provide a national currency based upon United States bonds, and to that end it was deemed wise to impose the tax in question. The tax was a means for effectually accomplishing the great object of giving to the people a currency that would rest, primarily, upon the honor of the United States, and be available in every part of the country. There was no purpose by the Act or by any of its provisions to raise revenue to be applied in meeting the expenses or obligations of the government.''

The supreme court of Oregon, in the case of. *Northern Counties Investment Trust* v. *Sears*, 30 Or. 388, 41 Pac. 931, 936, 35 L. R. A. 188, had under consideration the validity of an Act originating in the state senate under constitutional provisions similar to our own. The Act provided for the payment of certain fees to county officers for performing various services. It was there declared by the court: ''A law which requires a fee to be paid to an officer, and finally converted into the treasury, of a county, for which the party paying the fee receives some equivalent in return, other than the benefit of good government which is enjoyed by the whole community, and which the party may pay and obtain the benefits under the law, or let it alone, as he chooses, does not come within the category of an Act for raising revenue, and hence the objection made under this clause of the Constitution is not well taken.

The rule announced by the Supreme Court of the United States was adhered to by it in the case of *Millard* v. *Roberts*, 202 U. S. 429, 26 Sup. Ct. 674, 50 L. Ed. 1090.

It is said that the primary purpose of the Act in question was to raise revenue, and, as we understand the argument, some reliance is placed in support of this contention on the provisions of section 99 of Chapter 105, Laws 1933, reading as follows: ''The purpose and intent of this Act are to prohibit transactions in liquor which take place wholly within the State of Montana except under state control as specifically provided by this Act, and every section and provision of this Act shall be construed accordingly.''

The purpose of the Act was to limit and regulate the manufacture and sale of intoxicating liquor, as disclosed by the title and as disclosed by the provisions of the Act itself; the means of effectuating the limitation and regulation is by the system provided in the Act. True, the Act contains provisions as to the disposition of surplus profits from the conduct of the business, if any. As was said by the supreme court of Oregon in the case cited, supra, persons are not required to contribute under the provisions of the Act unless they desire to purchase liquor, and, if they do, they receive something for the expenditure of their money other than good government. Such profit as may be obtained from the conduct of the state liquor stores is incidental to the main purpose of the Act to limit and regulate the manufacture and sale of intoxicating liquors. Accordingly, we must hold that this last contention is likewise without merit.

This case was argued together with the case of *State* v. *Andre*, post, p. 366, 54 Pac. (2d) 566, the parties to each case being represented by the same counsel. Other questions which were presented on the argument are considered only in the brief filed in the *Andre Case*, and will receive the attention of the court in the opinion filed therein.

The judgment is reversed and the cause remanded to the district court of Silver Bow county, with directions to annul, vacate and set aside the judgment of dismissal of the cause, and to overrule the defendant's demurrer heretofore sustained.

Mr. Chief Justice Sands and Associate Justices Matthews, Stewart and Morris concur.

Rehearing denied February 13, 1936.