STATE, ex Rel. SMITH, et al., Relators, *v.*
DISTRICT COURT et al., Respondents.
(No. 8499.)
(Submitted March 3, 1944.   Decided June 6, 1944.)
[151 Pac. (2d) 500.]

*Mr. R. V. Bottomly*, Attorney General, *Mr. Clarence Hanley*, Assistant Attorney General and *Mr. J. Miller Smith*, for Relators, submitted an original and a supplemental brief; *Messrs. Hanley* and *Smith* argued the cause orally.

*Mr. Wellington D. Rankin*, *Mr. Arthur P. Acher* and *Mr.*

*Sherman W. Smith* for Respondents, submitted an original and a supplemental brief; *Mr. Rankin* and *Mr. Acher* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

On December 13, 1943, the county attorney of Lewis and Clark county filed a complaint, Cause No. 19366, in the district court of said county, alleging that gambling in violation of law had been carried on at various times specified therein at No. 20½ North Main Street in the city of Helena, and it was further alleged that unless restrained by the court such gambling would be continued. Helen Wilson Hale, Kenneth Egan and Flayvale Perkins, also known as Fritzie Perkins, were named as defendants. Helen Wilson Hale appears to be the owner of the building, and Kenneth Egan is the lessee of the first story thereof, and it further appears that he is the offending party. The second story of the building is alleged to be a rooming house or hotel. An injunction was prayed for to restrain the defendants, their employees and agents, from removing any of the things used in the alleged gambling operations, and further that the defendants and their employees and agents, etc., be restrained from all such alleged illegal practices, and that the nuisance be abated and the premises not be occupied for one year, and that the gambling equipment and paraphernalia be taken and disposed of according to law, and prayer was made for such other relief as might be found to be mete and just in the premises. A copy of an affidavit made by one Ray Rankin, recounting his experiences and observations relative to the gambling carried on in the place, was attached to the complaint.

December 13, 1943, the temporary injunction as prayed for was granted by Judge Horsky of Department No. 1 of the First Judicial District. Pursuant to the provisions of section 8868, Revised Codes, an affidavit of disqualification was filed against Judge Horsky by Gene M. Robertson, as agent for the defendant Kenneth Egan. Judge Horsky thereupon made and entered an order transferring the case to Judge Padbury of Department No. 2 of the same court. December 14th Judge Padbury, on

the application of defendant Kenneth Egan, made and entered an order dissolving the injunction theretofore issued by Judge Horsky and by the same document further ordered that the defendants show cause before his court at ten o'clock a. m., January 9, 1944, why they and their employees, agents, etc., should not be restrained and enjoined from permitting or maintaining a common nuisance in or upon the premises described and was thereafter absent from the state from December 16, 1943, until January 12, 1944. December 18, 1943, the county attorney of Lewis and Clark county filed a motion to annul, vacate and set aside Judge Padbury's order dissolving the injunction and ordering the defendants to show cause as mentioned above. It does not appear from the record that this motion has ever been passed upon, but it is alleged in the petition presently referred to whereby a writ of supervisory control was sought in this court that such order was not at any time either allowed or denied.

December 18, 1943, the Hon. Ernest T. Eaton, Acting Governor of the state of Montana, the Governor being absent from the state, issued an order directed to and requiring the Hon. Jeremiah J. Lynch, a judge of the Second Judicial District, to attend and "hold court in Department No. 2 of the First Judicial District of the State of Montana in and for the County of Lewis and Clark, beginning on the 28th day of December, 1943, and for such time thereafter as is necessary and required to dispose of and transact the judicial business of said court now pending and to arise in the future pertaining to said action until the final determination." The "application of J. Miller Smith" mentioned in the beginning of the order made by the Acting Governor does not appear in the record, and we can surmise what it alleged only by what appears in the order of the Acting Governor.

December 28, 1943, the defendant Kenneth Egan, through his attorneys, filed objection to the assumption of jurisdiction by Judge Lynch of the action. On that date, Judge Lynch appeared, assumed the bench pursuant to the order of the Acting

Governor and heard arguments on the objection to his assuming jurisdiction. The county attorney and his assistant and counsel for the defendants were present and took part in the proceedings. It appears that the court reconvened later the same day with the same officers and attendants that were present in the prior sitting, and after reciting the facts relative to the written objection, filed by the defendant Egan, Judge Lynch caused his conclusions in the premises to be entered on the minutes of the court as follows: "Whereupon after arguments by counsel for the respective parties said matter was submitted to the court and later in open court it was held by the said Jeremiah J. Lynch, Judge of the District Court of the Second Judicial District of the State of Montana, in and for the County of Silver Bow, that he was without jurisdiction to proceed in the case, without the consent of the parties, and declined to request another District Judge of any other county than Lewis and Clark County to try this case or to come in to hear and determine any pending matter therein."

January 21, 1944, the county attorney of Lewis and Clark county and the Attorney General of Montana filed their joint petition in this court praying for a writ of supervisory control directed to Judge Lynch requiring him to show cause why the minute entry made by him hereinabove mentioned should not be annulled and set aside, and that he make an order calling in some other district judge other than a judge of the First Judicial District to hear and determine the pending action involved. The petition for the writ of supervisory control was presented to this court sitting for the purpose, and after the grounds upon which it was based were presented to us orally, the parties were allowed until January 24th to submit briefs. January 25th the writ was issued, returnable February 21st. This date was later changed to February 24th. The writ was served and returned and we heard oral arguments February 24th, and additional time was allowed both parties in which to prepare and submit further authorities, and it was announced at the close of the

oral arguments that the case would be deemed submitted as of March 3rd.

It is alleged in the petition of the relators that the county attorney of Lewis and Clark county had filed an affidavit disqualifying Judge Padbury, and it appears to be understood that such is the fact, but the record before us certified by the clerk of the court of Lewis and Clark county does not show such filing. It is not questioned by any party in interest and it will be assumed that it was filed. February 24th, at the time of the oral arguments, counsel for defendants filed a motion to quash the alternative writ of supervisory control, and on the same date Judge Lynch's answer and return on the order to show cause was filed. In his answer Judge Lynch stated that the minutes as recorded by the clerk of the district court of Lewis and Clark county are not a "verbatim transcription" of the remarks made by Judge Lynch at the time of his ruling declining to assume jurisdiction, but alleged that he then and there stated that "Section 8823, R. C. M. 1935, appeared to be in conflict with Section 12, Article VIII of the Constitution of Montana, as construed in the decisions of the Supreme Court of Montana in the *Weston Case, In re Weston,* 28 Mont. 207, 72 Pac. 512, and *Clancy Case, State ex rel. Anaconda Copper Min. Co.* v. *Clancy,* District Court, 30 Mont. 529, 77 Pac. 312, and the *Driscoll Case, State* v. *Driscoll,* 101 Mont. 348, 54 Pac. (2d) 571, and that accordingly the Governor of the State was without authority to call in said respondent to assume jurisdiction in said action; * * *."

Judge Lynch in his general denial of allegations of Paragraph VI of the petition, which allegation we do not deem it essential to repeat here, adds to his denial the following statement:

"(a) That on the 14th day of December, 1943, and at all of the times subsequent thereto until the present time, the Honorable A. J. Horsky has been within the First Judicial District wherein he is one of the duly elected, qualified and acting district judges; that at all of the times herein mentioned, except during the period from December 16, 1943, to January 12, 1944,

the Honorable George W. Padbury, Jr., has been and now is likewise present in the First Judicial District wherein he is one of the duly elected, qualified and acting district judges.

"(b) That the Honorable George W. Padbury, Jr., the district judge in whose department said action is pending can call in a judge of another district to assume jurisdiction in said action by making an order calling in such district judge, and it is alleged upon information and belief that he will have no difficulty in securing a judge to try said cause, or in his absence or inability to act, the Honorable A. J. Horsky can call in another judge to assume jurisdiction in said action; that this respondent has not been within the First Judicial District since December 28, 1943."

In answer to Paragraph VIII of the petition Judge Lynch has this to say:

"Denies the allegations of Paragraph VIII thereof, and upon the contrary alleges the fact to be that the power to call in a judge from another judicial district of the State of Montana at all times herein mentioned has been vested in Honorable George W. Padbury, except during his absence as above set forth, during which time said power was vested in Honorable A. J. Horsky."

The relators contend that the question involved in this controversy is as to the constitutionality of section 8823, Revised Codes. That section provides:

"If for any cause a district court is not or cannot be held in any county by the judge or judges thereof, or by a district judge requested by such judge or judges to hold such court, or if the business of the court in any county is not or cannot be dispatched with reasonable promptness, the governor may, upon application of any interested person, by an order in writing, require some district judge to hold court in said county for such time as may be specified in the order."

We think the section is valid. We can conceive of a situation wherein a judicial district might be left without a judge and the only means of providing one would be by the exercise of the power vested in the Governor by that section.

But whether the section be invalid or not is immaterial here for the reason that there was in the First Judicial District a judge at all times in whom section 8868, Revised Codes, vested the power to call in another judge when Judge Lynch declined to assume jurisdiction. We think calling Judge Lynch in was improper in the circumstances for the reason that resort should not be had to section 8823 while the power granted by section 8868 has not been exhausted.

The rules of court of the First Judicial District legally adopted and in operation were given extended attention in both oral argument and in briefs of counsel. Nos. 3 and 4 of such rules provide in part that either of the two judges may in the absence of the other perform the duties of the one absent, and at no time nor at any stage of the controversy that is before us was the First Judicial District without at least one judge, and upon Judge Lynch's declining to assume jurisdiction application should have been made to Judge Padbury after his return and could have been made to Judge Horsky before Judge Padbury's return, to call in another district judge.

Actions involving controversies similar to the case at bar were before this court in *Rowan* v. *Gazette Printing Co.*, 69 Mont. 170, 220 Pac. 1104, and *Pincus* v. *Davis*, 95 Mont. 375, 26 Pac. (2d) 986. The former case arose in the Thirteenth Judicial District with Judge Spencer presiding, Judge Stong being the other judge in the district at that time. We quote a part of the opinion wherein provisions of the Constitution, the statutes of Montana and decisions of this court are cited that throw some light on the controversy before us. It was there said [69 Mont. 170, 220 Pac. 1106]:

"(2) If one district judge invites another to hold court for him, and the invitation is accepted, the invited judge, when he appears, and while he presides, has all the authority of the local judge. Section 9098, Rev. Codes 1921; *Farleigh* v. *Kelly*, 24 Mont. 369, 62 Pac. 495, 685.

"(3) Speaking generally, when the invited judge leaves the district in which he has presided he has no authority at cham-

bers in his own district to do anything affecting the business in the other district (*State ex rel. Mannix* v. *District Court*, 51 Mont. 310, 152 Pac. 753), except upon stipulation of the parties interested (*Eustance* v. *Francis*, 52 Mont. 295, 157 Pac. 573).

"(4) When a judge is disqualified for imputed bias he is without authority to act further in the action in which he is disqualified, except to arrange the calendar, regulate the order of business, call in another judge, or transfer the cause, if a transfer is proper. (Sec. 8868.)

"(5) If there be more than one judge in the district, the one first disqualified in a given case must call in another judge of the same district. (Sec. 8868.)

"(6) If all of the judges of a district are disqualified in a given case, a judge of another district must be called in to preside in the action. (Sec. 8868.)

"When Judge Spencer was first disqualified in this case he should have called upon Judge Stong to preside in the action; but the record fails to disclose that any such order was made. It fails likewise to show that any rules have been adopted in the Thirteenth judicial district for the apportionment of the business in the district between the two judges. In the absence of such rules, each of the judges had all the power and authority concerning any business in the district that is conferred upon any judge in this state. Until April 25, when he was disqualified, Judge Stong had complete authority to do anything in this case which ought to have been done, including the settlement of the pleadings and the trial of the case (*State ex rel. Little* v. *District Court*, 49 Mont. 168, 141 Pac. 151), and likewise he had authority to invite Judge Miller to do the same things or any of them. When Judge Stong was disqualified on April 25 he was without authority thereafter to act in this case, except to arrange the calendar, regulate the order of business, or call in another judge, and, since both of the judges were then disqualified, Judge Stong could call in any outside judge to whom he saw fit to extend an invitation.

"It is unnecessary to decide whether Judge Spencer had

authority on May 3 to call in Judge Jackson. The fact is that Jackson appeared and presided in court when this cause was tried and judgment rendered and entered. He then left the district and returned to his home in Butte. When the motion to set aside the judgment came on for hearing on May 12, neither of the resident judges was qualified to hear it. On May 11, Judge Stong invited Judge Miller to preside on May 12, and his authority to do so cannot be questioned. It is conferred expressly by section 8868, above. When Judge Miller responded to Judge Stong's invitation and presided in the district court of Carbon county on May 12, he was clothed with all the authority to act in this case which Judge Stong would have had if he had not been disqualified.

"It is idle for plaintiff to contend that by virtue of the order of May 3 Judge Jackson was given exclusive authority to hear and determine all matters involved in this controversy. If that contention should be granted it would lead to an absurd situation which the law does not contemplate and would not tolerate."

Coming now to our final conclusions as to this controversy, the various actions and things done since Judge Padbury was disqualified are now immaterial so far as the determination of the action is concerned, and Judge Padbury has returned to the state and to his duties as the regularly elected and qualified judge of Department No. 2 of the First Judicial District, and now has the power, and the statute imposes upon him the duty, to call in another district judge to hear the pending case. While Judge Padbury was absent from the state the power to call in another judge had reverted to Judge Horsky, but is now in Judge Padbury.

The contention that when a district judge is disqualified pursuant to section 8868 and a judge called declines to assume jurisdiction it is nevertheless the duty of the judge called to call another district judge to try the case is without merit. Judge Padbury may "call one trial judge after another" until he finally secures the services of one who will preside at

the trial of the action involved. (*Curry* v. *McCaffery*, 47 Mont. 191, 131 Pac. 673, and cases cited.)

The motion to quash the alternative writ of supervisory control is granted.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON, ADAIR and ERICKSON concur.

Rehearing denied September 7, 1944.