STATE EX REL. BENNETT, JUDGE, RELATOR, v. BONNER, GOVERNOR OF STATE ET AL., RESPONDENTS.

No. 8941.
Submitted December 13, 1949. Decided February 15, 1950.
214 Pac. (2d) 747.

416

Mr. Lyman H. Bennett, Jr., Virginia City, for relator. Mr. Bennett argued orally.

Arnold H. Olsen, Attorney General, H. D. Carmichael, First Assistant Attorney General, Messrs. H. L. Maury, A. G. Shone, William Meyer, and J. F. Emigh, all of Butte, for respondents. Mr. Carmichael, Mr. Maury, Mr. Meyer and Mr. Emigh argued orally.

Mr. Edmond G. Toomey, Helena, amicus curiae. Mr. Toomey argued orally.

MR. CHIEF JUSTICE ADAIR:

This is a case of original jurisdiction.

The relator, Lyman H. Bennett, is the duly elected, qualified and acting judge of the fifth judicial district of the state of

Montana, comprising the counties of Beaverhead, Jefferson and Madison.

The respondent, John W. Bonner, is the governor of Montana. The respondents, William R. Taylor and James T. Shea, are district judges, the former being the judge of the third judicial district, comprising the counties of Deer Lodge, Granite and Powell, and the latter being the judge of the seventeenth judicial district, comprising the counties of Phillips and Valley.

On the written application of several members of the bar residing in Butte, Montana, who appear as counsel for either plaintiff or defendant in seven actions or proceedings pending in the district court of the several counties constituting the fifth judicial district, the respondent governor made three certain orders directing the two respondent district judges to immediately hold court in the three counties comprising the fifth judicial district and to continue therein until the business of the court in said counties has been dispatched, but not later than November 1, 1950. The orders are identical as to form and contents except one is directed to the respondent Judge Taylor ordering him to hold court in Beaverhead county and the second is directed to Judge Shea ordering him to hold court in Jefferson county, while the third order directs Judge Shea to hold court in Madison county.

The first order reads:

"To William R. Taylor

"District Judge of the Third Judicial

"District of the State of Montana:

"You are hereby ordered and directed to immediately hold court in the County of Beaverhead, in the State of Montana, from this date until the business of the court therein has been dispatched, but not later than the first day of November, 1950, and you are further ordered and required to impanel a jury in the said county for the trial of all cases therein at issue, and where a jury is usual and necessary, and to try all of the jury cases in which the local judge has been disqualified and no

other judge has been called in to try the same, and if there are any cases at issue pending in said county wherein judges from other judicial districts in Montana have been called in, you are required to set said cases for trial, and cause the Clerk of the Court to notify the judge called in to try the same and the attorneys for the parties thereto of the date of trial, and to set and hear all motions, demurrers and probate proceedings pending in said county, and to arise during the period of your appointment.

"Dated at Helena, Montana, this 14th day of November, 1949.

"John W. Bonner,

"Governor of the State of Montana."

This proceeding is by the State of Montana on the relation of Lyman H. Bennett, the district judge of the fifth judicial district against the respondent governor and the respondent district judges for a writ of prohibition restraining the respondent district judges from proceeding under the aforesaid executive orders.

Relator's petition, *inter alia,* asserts:

(1) That unless the orders are annulled the respondent district judges will proceed to arrange the calendar of the court in each of the affected counties, to order juries impaneled, to hold court and to set and hear all motions, demurrers, and probate proceedings pending or to arise in said counties to November 1, 1950;

(2) That the orders purport to divest relator from jurisdiction to set or hear any motions, demurrers, or probate proceedings pending or to arise in the fifth judicial district to November 1, 1950;

(3) That the orders purport to deprive relator of jurisdiction to arrange the calendar of the district court in any of the counties of his district;

(4) That the respondent governor was entirely without jurisdiction to make the orders;

(5) That the orders were made in disregard of the provisions of Article IV, section 1, of the Constitution of Montana;

(6) That no statutory enactment authorizes the making of the orders;

(7) That no valid legislative authority could empower the governor to regulate the calendar and practice in district courts of the fifth judicial district or in any of the courts of this state;

(8) That relator has not invited the respondent district judges to hold court in his district and that the respondent judges are entirely without jurisdiction to hold court in any part of said district;

(9) That there are many proceedings, criminal and civil, now pending in said district wherein relator is not and has not been disqualified to act as judge;

(10) That the respondent governor is entirely without jurisdiction to remove or suspend the powers of any judicial officer within this state or to suspend the powers of relator as judge until November 1, 1950;

(11) That the orders were arbitrarily made and in breach of any discretion lawfully vested in the chief executive and interfere with the serious efforts of relator to arrange for a prompt disposition of all judicial matters pending in his district;

(12) That a real controversy exists as to whether or not relator is to be entirely divested of jurisdiction by said orders and as to whether or not relator is to preside at any time prior to November 1, 1950, in any proceeding, civil or criminal, within his district;

(13) That in order for relator to perform his duties as judge according to law, a declaration from this court is required as to relator's duties, powers and status as affected by said orders; and

(14) That the rights of all parties to all proceedings, criminal, civil and probate, pending or to arise in the fifth judicial district are seriously imperiled by said orders and that relator and all of said parties will and must remain in doubt concerning said rights until a full determination of this proceeding.

An alternative writ, returnable on a day certain, issued upon

the filing of relator's petition, was served upon respondents prohibiting them from proceeding under the aforesaid orders of the governor.

Respondents, appearing by counsel, interposed a motion to quash the alternative writ, and, without waiving their rights thereunder, made answer and return and filed briefs.

Saturday, December 3, 1949, a petition bearing the title and number of cause No. 8941, was filed in the office of the clerk of this court seeking an order granting "leave to The Montana Bar Association, through its officers and committee, * * * to appear herein as Amicus Curiae, with right to participate in the proceedings and to present arguments and file briefs on the issues made, or to be made." The petition is signed by six members of the bar of this court, namely, E. A. Blenkner, Esq., J. C. Garlington, Esq., Franklin Longan, Esq., Leo C. Graybill, Esq., W. B. Leavitt, Esq., and Edmond G. Toomey, Esq.

The petition represents that the Montana Bar Association "is a voluntary membership organization enrolling most of the lawyers of the State of Montana who are in the active practice of the law in the State of Montana as its members."

The respondent, Honorable John W. Bonner, Governor of the State of Montana, is a past president of the association, and doubtless the respondent district judges, James T. Shea and William R. Taylor, and the relator district judge, Lyman H. Bennett, and counsel for both relator and respondents now are or in the immediate past have been members of the Montana Bar Association.

An "amicus curiae" literally meaning a friend of the court is a person, whether attorney or layman, who, as a stander-by, when a judge is doubtful or mistaken, may upon leave granted in a case then before him, inform the court as to facts or situations that may have escaped consideration or remind the court of legal matter which has escaped its notice and regarding which it appears to be in danger of going wrong.

The right to be heard as amicus curiae is within the discretion

of the court and is in nowise dependent upon the consent of the parties to the proceeding.

An amicus curiae may be appointed by the court sua sponte or he may appear by leave of court.

An amicus curiae is not a party to the action,—he has no control over the proceedings,—he must take the case as he finds it, and under the rule that the constitutionality of a statute may not be attacked by one whose rights are not affected by the operation of the statute, an amicus curiae has no right to question the constitutionality of·an act and the court will not pass on grounds of invalidity urged by an amicus curiae but not presented by the parties.

The statements of an amicus curiae are to be weighed and tested like other evidence, and it is within the discretion of the court as to whether it will accept the advice or suggestions of an amicus curiae.

Present in the courtroom on the return day were the parties litigant, their counsel, the court's officers and attendants and various other persons or standers-by, some of whom are members of the bar of this court and others being laymen. From these standers-by so manifesting their interest in the proceedings and matter about to be presented must come the amici curiae or friends whom the court allows to assist and enlighten it, and not from any organization or association of which the standers-by may happen to be officers or members.

It was therefore ordered that the petition of the named association be denied, but it was further ordered that the following named *persons,* each being a member of the bar of this court, namely, Edmond G. Toomey, Esq., E. A. Blenkner, Esq., J. C. Garlington, Esq., Franklin Longan, Esq., Leo C. Graybill, Esq., and W. B. Leavitt, Esq., be allowed to appear as amici curiae herein by serving and filing briefs, and at the conclusion of the arguments of counsel for the parties litigant that Edmond G. Toomey, Esq., on behalf of said amici curiae, be allowed to orally argue the issues presented.

Mr. Toomey is the only amicus curiae to file a brief and thus

avail himself of the above order, and the court expresses its obligation for his carefully prepared brief and for his able oral argument following the oral argument by counsel for the respective parties.

On the hearing it appeared that in a number of the pending actions and proceedings counsel had filed affidavits against relator effecting his disqualification as judge for imputed bias or prejudice; that there are a number of pending cases at issue and requiring jury trials and that no jury has been called or trial calendar set; that prior to the making of the executive orders relator had made an order calling in Judge Charles B. Elwell of the twelfth judicial district to hear, try and determine all causes and matters pending wherein relator has been or is disqualified except such causes wherein another judge had theretofore been called in and had assumed jurisdiction, but that Judge Elwell had declined to accept jurisdiction in certain actions and proceedings until the effect of the executive orders had been determined; that in a matter pending in the district court of Jefferson county Judge Elwell had accepted jurisdiction and the matter was set for hearing for November 17, 1949, but before said date counsel in said cause filed an affidavit against Judge Elwell disqualifying him for imputed bias or prejudice; that on November 18, 1949, Judge Elwell, on relator's call, arrived in the fifth judicial district to sit in certain matters and proceedings wherein disqualifying affidavits have been filed against relator and that Judge Elwell there indicated that he would consider calendar conditions and hear and determine the matters pending in said district to the extent possible without conflicting with the performance of his duties in his own district.

This proceeding involves the power and authority reserved for and vested in the three departments of government under our Constitution.

The office of governor does not exist by virtue of the common law. Under our system of government the office is created by the people by constitutional provision and the people by

amendment to their Constitution may abolish the office altogether. See 23 Am. Jur., Governor, sec. 2, p. 824.

Since a governor is purely an executive officer, his general authority is narrowly limited by the Constitution. While the Constitution vests in the governor the ''supreme executive power'' Article VII, sec. 5, yet this ''implies such power as will secure an efficient execution of the laws, the peculiar province of that department to be accomplished, however, in the manner, by the methods, and within the limitations prescribed by the Constitution and statutes of the state.'' 24 Am. Jur., Governor, sec. 5, p. 826.

The authority to make the three executive orders rests upon the power conferred by the Constitution upon the governor, viewed in the light of the limitations, therein and by statute, prescribed.

The Constitution of Montana provides:

''The powers of the government of this state are divided into three distinct departments: The legislative, executive, and judicial, and *no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others,* except as in this constitution expressly directed or permitted.'' Article IV, sec. 1. Emphasis supplied.

''The legislative authority of the state shall be vested in a legislative assembly, consisting of a senate and house of representatives; but the people reserve to themselves power to propose laws, and to enact or reject the same at the polls * * *'' Article V, sec. 1.

''The executive department shall consist of a governor, lieutenant-governor, secretary of state, attorney general, state treasurer, state auditor and superintendent of public instruction * * *'' Article VII, sec. 1.

''The Supreme *executive power* of the state shall be vested in the governor, who shall see that the laws are faithfully executed.'' Article VII, sec. 5. Emphasis supplied.

''The governor may require information in writing *from the*

*officers of the executive department* upon any subject relating to the duties of their respective offices * * *'' Article VII, sec. 10. Emphasis supplied.

''Vacancies in the office of justice of the supreme court, or judge of the district court, or clerk of the supreme court, shall be filled by appointment, by the governor of the state * * *'' Article VIII, sec. 34.

''The *judicial power* of the state shall be vested in the senate sitting as a court of impeachment, in a supreme court, district courts, justices of the peace, and such other inferior courts as the legislative assembly may establish in any incorporated city or town.'' Article VIII, sec. 1. Emphasis supplied.

''The state shall be divided into judicial districts * * *'' Article VIII, sec. 12.

In each judicial district established by law there shall be elected by the electors thereof at least one judge of the district court. Article VIII, secs. 12, 14.

''Any judge of the district court may hold court for any other district judge, and shall do so when required by law.'' Article VIII, sec. 12.

''Until otherwise provided by law * * * Beaverhead, Jefferson and Madison counties'' shall constitute the fifth judicial district. Article VIII, sec. 13. See R. C. M. 1947, sec. 93-301.

''In each district where two or more counties are united, until otherwise provided by law, *the judges of such district shall fix the term of court,* provided that there shall be at least four terms a year held in each county.'' Article VIII, sec. 17. Emphasis supplied. Compare State v. Bristol, 21 Mont. 578, 55 Pac. 107.

''The supreme court, *except as otherwise provided in this constitution* * * * shall have a general supervisory control over all inferior courts,* under such regulations and limitations as may be prescribed by law.'' Article VIII, sec. 2. Emphasis supplied.

''* * * Said court shall have power in its discretion to issue and to hear and determine writs of habeas corpus, mandamus,

quo-warranto, certiorari, prohibition and injunction, and such other original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction.'' Article VIII, sec. 3.

''All laws relating to courts shall be general and of uniform operation throughout the state; and the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, shall be uniform.'' Article VIII, sec. 26.

''The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.'' Article III, sec. 29.

Jurisdiction as applied to courts is the power or capacity *given by law* to a court to entertain, hear and determine the particular case or matter. Judicial power is the authority not only to decide, but to make binding orders or judgments. The kind of authority that is judicial in its nature relates to and acts upon the rights of person or property not created by this authority but existing *under the law*. This judicial authority in specific controversies between parties determines these rights as they exist and does so at the instance of a party to such controversy. These qualities distinguish judicial power from that which is simply legislative or executive.

Judicial power as contra-distinguished from the power of the law has no existence. Judicial power is exercised by means of courts which are the mere creations and instruments of *the law*, and independent of *the law* the courts have no existence. *The law* precedes the courts. *The law* governs the courts. Thus it is the function of the courts to expound and administer *law* in those causes properly brought before them in course of legal procedure.

Judicial power is never exercised for the purpose of giving effect to the will of the judge. It is always exercised for the purpose of giving effect to the will of the people as that will is expressed in *the law*.

"Law is a solemn expression of the will of the supreme power of the state." R. C. M. 1947, sec. 12-101. "The will of the supreme power is expressed: 1. By the constitution; 2. By statutes." R. C. M. 1947, sec. 12-102. "The organic law is the constitution of government, and is altogether written. Other written laws are denominated statutes. The written law of this state is therefore contained in its constitution and statutes, and in the constitution and statutes of the United States." R. C. M. 1947, sec. 93-1001-9.

Thus the jurisdiction of a court means the power or authority which is conferred upon a court by the law including the organic law written in the constitution, to entertain, hear and determine controversies or causes between parties and to carry its judgments and orders into effect. By jurisdiction over the subject matter is meant the nature of the cause of action, and the relief sought and this is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.

A judicial tribunal established by the constitution owes its existence to that instrument alone and is in no way dependent upon an act of the legislative assembly.

The source of the jurisdiction of the supreme court of this state is found in sections 1, 2 and 3 of Article VIII of the Constitution of Montana. See Bordeaux v. Bordeaux, 26 Mont. 533, 535, 69 Pac. 103.

The source of the jurisdiction of the district courts of this state is found in sections 1, 11, 12, 13 and 17 of Article VIII of the Constitution of Montana.

In this state a district judge may be disqualified for imputed bias or prejudice by the timely filing of a proper disqualifying affidavit as provided in R. C. M. 1947, sec. 93-901. This statute states in part: "Upon the filing of the affidavit, *the judge* as to whom said disqualification is averred shall be without authority to act further in the action, motion, or proceeding, but the provisions of this section do not apply to the arrangement of the

calendar, the regulation of the order of business, the power of transferring the action or proceeding to some other court, *nor to the power of calling in another district judge* to sit and act in such action or proceeding, providing that no judge shall so arrange the calendar as to defeat the purposes of this section. No more than two judges can be disqualified for bias or prejudice, in said action or proceeding, at the instance of the plaintiff, and no more than two at the instance of the defendant, in said action or proceeding \* \* \* and upon the second or any subsequent disqualification of a judge in the cause, *a district judge of another judicial district of the state must be called in to preside* in such action, motion, or proceeding, or the action, motion, or proceeding transferred to a district judge of another judicial district of the state; when another judge has assumed jurisdiction of an action, motion, or proceeding, the clerk of the district court in which the same was pending, shall at once notify the parties or their attorneys of record in the same, either personally or by registered mail, of the name of the judge called in, or to whom such action, motion, or proceeding was transferred.'' Emphasis supplied.

R. C. M. 1947, sec. 93-315, in part, provides: ''Juries for the trial of causes must be called on the first Monday of every alternate month, *if the judge so directs,* and oftener if the public business requires. In each district where two or more counties are united *the judge thereof must fix the term of court in each county in his district,* which must be held at the county seat, and there must be at least four terms a year in each county. \* \* \* *nothing in this section shall be construed to prevent the calling of a special term of court, with or without a jury, when in the opinion of the presiding judge the same is necessary.* The district judge may adjourn a term of district court in one county to a future day certain, and in the meantime hold court in another county.'' Emphasis supplied.

R. C. M. 1947, sec. 93-502, provides: ''\* \* \* In case of the failure or refusal of any district court to adopt and promulgate

rules of court, *the supreme court may,* upon the application of any interested person, *adopt and promulgate rules for the government of such court,* and when adopted and promulgated such rules shall remain in full force and effect until modified or repealed by the authority adopting them. Any judge who shall fail or refuse to comply with and carry out in good faith the rules of court adopted by the supreme court, as herein provided for, shall be guilty of a contempt of the supreme court.'' Emphasis supplied.

The above statutes recognize the authority conferred as well as the duty imposed by the constitution upon the district judge to ''fix the term of court,'' Art. VIII, sec. 17, to perform the duties incident thereto, being arranging, calling and setting the calendar of actions and proceedings pending in his court, regulating the order of business therein and, in proper cases, transferring the action or proceeding to some other court and calling in another district judge to sit and act in actions or proceedings wherein he has been disqualified. Such statutes are in harmony with the provisions of the constitution, above quoted, conferring power upon the district courts and the judges thereof.

In this state the separation of governmental powers is not left to implication but it is ordained in the constitution by express mandate. There being no provision of the constitution empowering the governor to make the executive orders in question, the one and only source of power relied upon to authorize their making is the legislative enactment found in R. C. M. 1947, sec. 93-312, which provides: ''If for any cause a district court is not or cannot be held in any county by the judge or judges thereof, or by a district judge requested by such judge or judges to hold such court, or if the business of the court in any county is not or cannot be dispatched with reasonable promptness, the governor may, upon application of any interested person, by an order in writing, require some district judge to hold court in said county for such time as may be specified in the order.''

The foregoing statute assumes to authorize the governor ''by

an order in writing'' to ''require some district judge to hold court in said county for such time as may be specified in the order.'' Such language, however, may not be said to empower the governor to exclude or remove from office the duly elected, qualified and acting judge of the district, nor to ''fix the term of court,'' Const. Art. VIII, sec. 17, nor to order juries impaneled, nor to order a called-in judge ''to set and hear all motions, demurrers, and probate proceedings pending in said county, and to arise during the period'' of the called-in judge's appointment, nor to otherwise suspend the powers conferred upon the judge of the district by the constitution. The state legislature cannot enact a valid law which goes counter to any of the mandatory and prohibitory provisions of the state constitution. ''The rule is well settled that the judicial power cannot be taken away by legislative action.'' 11 Am. Jur., Constitutional Law, sec. 206, p. 908; quoted with approval in State ex rel. Grant v. Eaton, 114 Mont. 199, 211, 133 Pac. (2d) 588. See Lindeen v. Montana Liquor Control Board, 122 Mont. 549, 207 Pac. (2d) 977, 981.

In State ex rel. Smith v. District Court, 116 Mont. 251, 151 Pac. (2d) 500, 502, the acting governor, relying upon the provisions of section 8823, R. C. M. 1935, now R. C. M. 1947, sec. 93-312, by executive order, called Judge Jeremiah J. Lynch, a judge of the district court of the second judicial district in and for the county of Silver Bow, to hold court and preside in a cause pending in the district court of the first judicial district in and for the county of Lewis and Clark, wherein an affidavit of disqualification had been filed as to Judge A. J. Horsky, presiding in department No. 1 of the latter district, who transferred the cause to department No. 2, of said court, presided over by Judge George W. Padbury, Jr. The latter assumed jurisdiction, made an order in the cause and, two days later, left the state. In obedience to the executive order so made during and because of Judge Padbury's absence from the state, Judge Lynch assumed the bench in Judge Padbury's department whereupon the

defendants challenged his power to assume jurisdiction of the cause. In sustaining such challenge and in declining to assume jurisdiction in the action or to request any other district judge to try same, Judge Lynch stated that, "Section 8823, R. C. M. 1935 [now R. C. M. 1947, sec. 93-312], appeared to be in conflict with Section 12, Article VIII of the Constitution of Montana, as construed in the decisions of the Supreme Court of Montana in the Weston case, In re Weston, 28 Mont. 207, 72 Pac. 512, and Clancy case, State ex rel. Anaconda Copper Mining Co. v. Clancy, District Court, 30 Mont. 529, 77 Pac. 312, and the Driscoll case, State v. Driscoll, 101 Mont. 348, 54 Pac. (2d) 571, and that accordingly the Governor of the State was without authority to call" upon him [Judge Lynch] "to assume jurisdiction in said action * * *" Judge Lynch also caused the minutes of said district court to show "that he was without jurisdiction to proceed in the case, without the consent of the parties, and declined to request another District Judge of any other county than Lewis and Clark County to try this case or to come in to hear and determine any pending matter therein."

On original proceedings here instituted this court declined to uphold the executive order calling in Judge Lynch, holding same to be improper under the circumstances. We there concluded: "While Judge Padbury was absent from the state the power to call in another judge had reverted to Judge Horsky * * *. The contention that when a district judge is disqualified pursuant to section 8868 and a judge called declines to assume jurisdiction it is nevertheless the duty of the judge called to call another district judge to try the case is without merit." Regarding the contention that the controversy involved the constitutionality of section 8823, R. C. M. 1935, now R. C. M. 1947, sec. 93-312, this court held: "*But whether the section be invalid or not is immaterial here* for the reason that there was in the First Judicial District a judge at all times in whom section 8868, Revised Codes, vested the power to call in another judge when Judge Lynch declined to assume jurisdiction. *We think calling Judge*

*Lynch in was improper in the circumstances for the reason that resort should not be had to section 8823 while the power granted by section 8868 has not been exhausted."* Emphasis supplied.

As a passing collateral comment, Mr. Justice Morris observed: "We *think* the section is valid. We can conceive of a situation wherein *a judicial district might be left without a judge* and the only means of providing one would be by the exercise of the power vested in the Governor by that section." Emphasis supplied. This remark and thought so incidentally and collaterally made would seem to indicate that as then viewed by the author of the opinion the only situation of which he could then conceive to which the section could apply would be where "a judicial district might be left without a judge," but clearly this thought so expressed constitutes pure *obiter dictum* and may not be considered as a holding or determination by this court that R. C. M. 1947, sec. 93-312, section 8823, R. C. M. 1935 does not run counter to the mandatory and prohibitory provisions of the constitution which govern the courts of record in this state.

The judicial department is by no means helpless nor do its powers require the impetus of an order from the executive department for activation. Our system of constitutional government does not contemplate that the governor be made the judge of when a district court may or may not be held in any county or that he be made the judge of whether a district judge called in by the presiding judge of a district may or may not act or that he be made the judge of which particular judge may be called in upon the disqualification of the incumbent district judge for imputed bias or that he be made the judge or whether the judicial business of any judicial district or county of the state cannot be dispatched with reasonable promptness. Such power would place the business of the courts at the mercy of the chief executive. It would restore the *Curia Regis,*—the King's Courts and take from the district judges of this state the judicial power with which the constitution invests them.

*Obsta Principiis.* "It is the duty of courts to be watchful for

the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis.*" Boyd v. United States, 116 U. S. 616, 635, 6 S. Ct. 524, 535, 29 L. Ed. 746. *Obsta Principiis,*—resist the *first* beginnings. Do not let the tyranny of government get a start. "In the questions of power, then," wrote Thomas Jefferson, "let no more be heard of confidence in man, but bind him down from mischief by chains of the Constitution."

The constitutional judicial department is an American invention. It was devised to see that government goes no farther than its authority extends. Such department must not exceed the authority *granted* it by the people. Its decisions must be the voice of *law* and justice and not the echo of friction and violence. Neither the people nor the judiciary should permit the courts to be pursued by "blocs," by lobbies, by "pressure groups," or by an executive department or even by a legislative department with what Madison termed an "enterprising ambition" to extend its power.

In analyzing the provisions of section 12 of Article VIII of the Constitution in his opinion in Re Weston, 28 Mont. 207, 218, 72 Pac. 512, 516, Mr. Justice Holloway said:

"This section of the Constitution makes provision for the substitution of one judge for another, and *must be held to be exclusive*, at least until the authority vested in it has been exhausted. By analysis, we reach the result:

"(1) The framers of our organic law *saw fit to repose the power* of substituting one district judge for another *in the district judge himself,* and upon *his* invitation any other district judge in the state may be called to take *his* place; and, if the invitation be accepted and acted upon, no authority can be found to deny such invited judge authority to proceed, and that, too, though he may reside in the same district as the one extending the invitation.

"(2) It cannot be seriously contended that the purpose of the act was to provide a mode of substitution in addition to the one

prescribed by the Constitution. This, clearly, cannot be done; but, if it could, such a result would lead to endless confusion."

In his specially concurring opinion in the Weston case, supra, Mr. Chief Justice Brantly said: "I concur in the result reached by Mr. Justice Holloway, but, speaking for myself, do not wish to authorize the inference from anything said in the opinion that this court might not, under its power of supervisory control, and independently of legislative action, upon proper application, prohibit a district judge from proceeding with the trial of a cause if it were made manifest that he was for any reason incapable of giving either of the parties a fair trial. Whether or not this court has such power is a question which is not presented upon this application. I do not wish to be understood as expressing any opinion as to whether this power does or does not exist, but do not think consideration of the question should be regarded as foreclosed."

In his specially concurring opinion in the above case Mr. Justice Milburn said: "I concur in the opinion of Mr. Justice Holloway, and in the conclusion reached by him; but I wish to add that there should not be any inference drawn from the language of the opinion that, independently of the act * * * this court has not any power to control a lower court, the judge of which is sitting in a cause in which he is biased and prejudiced. This question is still an open one, and as to it I do not express any opinion."

In construing section 12, Article VIII of the Constitution, supra, in State ex rel. Anaconda Copper Mining Co. v. Clancy, 30 Mont. 529, 77 Pac. 312, 315, this court said: "This provision is simply *a means placed in the hands of the judges themselves to facilitate the dispatch of business* in which they may be interested or otherwise disqualified from acting. * * * All that was decided in the Weston case, 28 Mont. 207, 72 Pac. 512, respecting this matter, was that *the only method by which one judge can be secured to preside for another is upon the invitation of the resident judge himself,* and in this respect *the provisions* of

section 12, Article VIII, *are prohibitory.*" Emphasis supplied. See: State v. Driscoll, 101 Mont. 348, 359, 54 Pac. (2d) 571. Compare: State ex rel. Sedillo v. Anderson, 53 N. M. 441, 210 Pac. (2d) 626.

Here, as in the Smith case, supra, it is not at all necessary to a determination of this appeal for this court to pass upon the validity of R. C. M. 1947, sec. 93-312. The relator, Judge Bennett, has been and is within his judicial district. He was and is empowered to hold court in any county of his district in any and all actions and proceedings at issue or requiring action wherein he has not been disqualified. In the actions or proceedings wherein relator is disqualified, he is empowered and it is his duty to call in a district judge of another judicial district to preside. Relator is an officer of the judicial department of this government. Should he decline to perform his official duties as a judge, the judicial department of the government has ample power and machinery to ascertain and determine the facts and thereupon to afford appropriate, prompt and adequate relief. See Commonwealth ex rel. Duff v. Keenan, 347 Pa. 574, 33 A. (2d) 244.

The remedy is not to relieve,—but to require the performance of official duty. Relator is clothed with the necessary power to attend to the necessary business activities and "housekeeping" functions that must be performed for every court. This power he must have to enable him to function as judge. While present in his district and qualified and capable, he may not be divested of his authority and jurisdiction by an executive order of the governor and be forced to abdicate and stand aside while others take over his office and perform the duties imposed upon him by the constitution and necessarily attendant upon the office of district judge of the fifth judicial district.

Under our constitution it is from the supreme court of this state rather than from the supreme executive power of the state that relief is to be had where a district court or a district judge is in error or in need of superintending guidance or correction.

"This court is placed by the constitution at the head of the judicial system of the state. From its judgments there is no appeal to any other state tribunal, and its determinations are binding upon the rest of the state judiciary. The legislature cannot interfere with its existence or supremacy, nor can that body alter the nature of its jurisdiction and duties * * *." People ex rel. Attorney General v. Richmond, 16 Colo. 274, 26 Pac. 929, 931; In re Weston, supra, 28 Mont. at page 216, 72 Pac. at page 516.

"The other coordinate departments have been generally free from attempts to impinge upon the rights, powers or prerogatives of this department, and the judicial department has consistently and uniformly avoided attempts to encroach upon the fields properly occupied by the other departments under the terms of a very clear and explicit Constitution." In re Unification of Montana Bar Association, 107 Mont. 559, 87 Pac. (2d) 172, 173.

Whenever the will of the legislature, declared in its statutes, stands in opposition to the will of the people, declared in the constitution, the judges ought to be governed by the constitution rather than by the statutes. The judges ought to regulate their decisions by the fundamental laws, rather than by those which are not fundamental.

The governor "ordered and directed" the respondent Judge Taylor: (1) To quit his duties as judge of the third judicial district and "to immediately hold court in the County of Beaverhead in the" fifth judicial district from November 14, 1949, until "not later than the first day of November, 1950;" (2) to impanel a jury in said county; (3) to try all jury cases in which Judge Bennett had been disqualified and no other judge has been called in; (4) "to set and hear all motions, demurrers and probate proceedings pending in said county, and to arise during the period" from November 14, 1949 to November 1, 1950. By two other executive orders of the same date the respondent Judge Shea was "ordered and directed" to quit his duties as judge of the seventeenth judicial district and "to im-

mediately. hold court" in Madison and Jefferson counties for the same period of time and to there transact like judicial business. The inappropriateness of having an executive department administer the business affairs of the court is manifest. The constitution clothes the governor with no judicial power nor does it authorize him either to transact or to direct the transaction of such judicial business.

*Confusion.* The Weston case, supra, not only holds the provisions of the constitution for the substitution of one judge for another to be *exclusive* but that a legislative enactment providing an additional or different mode would lead to endless confusion. That confusion would result from multiple command is most forcibly demonstrated in the instant case. Here the governor "ordered and directed" Judge Taylor, of the third judicial district, to proceed to the fifth judicial district and "to immediately hold court" in Beaverhead county. The governor also "ordered and directed" Judge Shea, of the seventeenth judicial district, to proceed to the fifth judicial district and "to immediately hold court" in Jefferson and Madison counties. Judge Bennett, the resident judge of the fifth judicial district, called Judge Elwell of the twelfth judicial district to hear and try and determine causes and matters pending in Jefferson and Madison counties wherein Judge Bennett has been disqualified. Judge Bennett also called Judge John B. McClernan of the second judicial district to hear, try and determine certain causes pending in Beaverhead county wherein Judge Bennett has been disqualified. Ponder the situation had this court not intervened and prohibited the respondent district judges from proceeding to and holding court in the fifth judicial district as commanded by the executive orders. Had both Judge Taylor and Judge McClernan, on the same hour of the same day, assumed the bench at the county seat in Beaverhead county to hear, try and determine the same case there pending which judge would have been clothed with the necessary authority to proceed? Had Judge Shea and Judge Elwell, each responded to their respective calls, and, at the opening of court on the same

day, assumed the bench at the county seat of Jefferson or Madison county and called the same case there pending for trial, which judge would have the jurisdiction essential to enable him to render a valid judgment? The plaintiff and the defendant in each pending action may each disqualify two district judges for imputed bias or prejudice so that four judges in all may thus be divested of jurisdiction to proceed. Were either party to the litigation to file disqualifying affidavits against Judge Taylor or Shea, who then would be empowered to call in another district judge? Would that duty devolve upon the governor or upon the resident judge of the district? Should other disqualifying affidavits thereafter be filed against the judge or judges so invited to hold court in said district, whose duty is it under the law to attend to the judicial business of the judicial district including the business of calling in still other judges to assume jurisdiction of the pending cases? Does the law make performance of such duties the business of the governor or does it place such business and responsibility in the lap of the duly elected resident judge of the particular judicial district?

Regarding the complications that would result from multiple command of the courts of this state, Mr. Justice Holloway, in the Weston case, supra, said that "the anomalous, not to say ridiculous, position * * * would be too palpable for discussion. The resulting confusion would be intolerable."

The authority of the resident district judge is sustained by the constitution, the order and decision of Judge Lynch reviewed in the Smith case, and by the decisions of this court in the Weston case, the Clancy case, the Driscoll case, and the Smith case, while only R. C. M. 1947, sec. 93-312 ·assumes to confer any such power on the governor. As between the fundamental law and the statute, the former controls.

In Application of O'Sullivan, 117 Mont. 295, pages 301-303, 158 Pac. (2d) 306, page 309, 161 A. L. R. 487, this court quoted with approval and at considerable length from State ex rel. White v. Barker, 116 Iowa 96, 89 N. W. 204, 209, 57 L. R. A. 244, 93 Am. St. Rep. 222, the quotation concluding: "Let us adhere

to the traditions and history of the past; let the judge be supreme in his field, the legislator in his, and the executive remain where the constitution placed him; let the three co-ordinate departments of government be preserved intact; let neither trench upon the other; and our liberties will be preserved, and our rights duly maintained.''

It is clear to us that under our constitution the problem here presented is for the judicial department and not for the legislative department nor for the executive department. The very purpose of vesting the respective powers of government in three different departments, which is their separation in its proper sense, is to prevent control over two powers coming to the same hands.

To prevent one department exercising its own functions with respect to the doings of another would vest in the other uncontrolled power which separation is designed to prevent. This does not suppose a superiority of the judicial to the executive or to the legislative power. It only supposes that the power of the people is superior to the power vested in any department of government.

In the exercise of the power conferred upon it by the constitution to deal with the situation here presented, this court, on December 21, 1949, and in advance of this opinion, made the following order herein:

''It is ordered that the writ heretofore issued herein be made permanent; that the three executive orders made and issued November 14, 1949, be vacated, and that a writ of mandamus issue forthwith from this court directed to the relator, Lyman H. Bennett, Judge of the Fifth Judicial District of the State of Montana, commanding him to consider, decide and adjudicate the cases now at issue in said district court in which he is not disqualified; that in any causes in which he stands disqualified by affidavit or otherwise that he call in another judge or judges to act; that he call juries and set for trial all cases at issue requiring trial by jury; and that all this be done by January 25, 1950, this writ to be returnable to this court at 10 o'clock a. m.,

Wednesday, January 25, 1950, at which time relator will inform this court as to what has been done in that behalf.

"This order does not prevent relator from calling in the respondent district court judges nor disqualify them from acting when so called."

The writs were issued as directed and served. Relator has made his return to the writ directed to him representing to this court that he has obeyed its mandate in each of the three counties, comprising his district by calling calendars, setting for trial actions at issue and ready, and summoning jurors; that as of January 22, 1950, the date of his return, he was then engaged in disposing of the trial of criminal causes in Beaverhead county; that various civil causes have been and will be set for trial and tried by jury following disposition of said criminal causes; that other district judges have been called for cases so requiring and that other judges will be called as to other cases as required and that similar disposition will be made of all cases now pending in the counties of Jefferson and Madison as rapidly as conditions in said district will permit. Accordingly this court retains jurisdiction herein and orders that relator make further return to this court at 10 o'clock a. m., April 18, 1950, showing what further has been done under the writ directed to him.

The executive orders of the governor are set aside and the writ of prohibition is made permanent.

ASSOCIATE JUSTICES METCALF and BOTTOMLY, concur.

MR. JUSTICE FREEBOURN, dissenting:

I believe section 8823, R. C. M. 1935, now section 93-312, R. C. M. 1947, is unconstitutional, violating section 1 of Article IV, sections 1, 2 and 3 of Article VIII, and section 17 of Article VIII of the Constitution of Montana.

Since this court, in State ex rel. Smith v. District Court, 116 Mont. 251, 151 Pac. (2d) 500, has held this section of the statute constitutional and operative, the order of Governor Bonner call-

ing in District Judges William Taylor and James Shea to hold court in the fifth judicial district was justified and proper.

Such order showed good judgment and resulted in correction of long-standing wrongs.

MR. JUSTICE ANGSTMAN, dissenting:

My disagreement with the majority opinion is not with many of the fundamental principles enunciated in it but with their applicability to the facts of this case. The majority opinion is based upon a misconception of the facts. Governor Bonner's orders do not divest Judge Bennett of authority or jurisdiction over cases in which he is not disqualified. Judge Bennett is not forced to abdicate or stand aside "while others take over his office," save as to cases in which he is disqualified and as to those the law and not the orders of Governor Bonner forces him to stand aside.

In the answer and return made by Governor Bonner, he alleges in substance that the intent and purpose of the orders made by him was not to divest the Hon. Lyman H. Bennett of jurisdiction in all matters filed in his court but that the intent was to require Judges Shea and Taylor to hold court and impanel juries in the respective counties of the fifth judicial district until the business of that district had been dispatched as to cases at issue and where juries are usual and necessary and to try "all jury cases in which the Hon. Lyman H. Bennett had been disqualified and no other judge had been called in to try the same and as to all cases" wherein Judge Bennett had been disqualified and another judge had been called in and accepted jurisdiction that they be set for trial and that the judge and the attorneys for the parties be notified and as to cases and probate proceedings in which Judge Bennett had been disqualified to set motions, demurrers and probate proceedings for hearing and that the judge and respective counsel be notified thereof.

Governor Bonner's orders were narrowed by the admissions made in the answer and I think as thus narrowed should have been sustained by this court.

Section 93-312, R. C. M. 1947, provides: "If for any cause a district court is not or cannot be held in any county by the judge or judges thereof, or by a district judge requested by such judge or judges to hold such court, or if the business of the court in any county is not or cannot be dispatched with reasonable promptness, the governor may, upon application of any interested person, by an order in writing, require some district judge to hold court in said county for such time as may be specified in the order."

That the business of the fifth judicial district is not dispatched with reasonable promptness my associates concede else they would not have converted the petition of Judge Bennett for a writ of prohibition against Governor Bonner and Judges William R. Taylor and James T. Shea into a mandamus proceeding against himself ordering him to call juries and judges to try the cases pending in that district. It should be said too that much of the difficulty in the fifth judicial district is due to the free use of the statute authorizing the disqualification of judges for imputed bias and hence is a matter over which Judge Bennett has no control.

The majority opinion places reliance upon the decision in State ex rel. Smith v. District Court, 116 Mont. 251, 151 Pac. (2d) 500, 503, to condemn the order of Governor Bonner. In that case this court dismissed summarily the contention that section 93-312, R. C. M. 1947, then sec. 8823, R. C. M. 1935, was or is unconstitutional and held it to be valid. This court there said: "We think the section is valid. We can conceive of a situation wherein a judicial district might be left without a judge and the only means of providing one would be by the exercise of the power vested in the Governor by that section." This was neither dictum nor the mere passing comment of the Justice who wrote the opinion. It was a part of the court's opinion which was signed by all members of the court including the author of the majority opinion herein.

The court went further however and held that this section could not be resorted to without first exhausting the power

granted by section 8868, R. C. M. 1935, now section 93-901, R. C. M. 1947. In the Smith Case there was involved but one lawsuit the trial of which was being delayed. The conclusion reached in that case was proper. There was in fact in that case no basis for resorting to section 93-312.

Conditions justifying action by the Governor were not present in that case. It was the first part of section 93-312 that was attempted to be relied on in the Smith Case and there was no claim or contention that the business of the court as a whole *is not dispatched with reasonable promptness* so as to bring the case within the latter part of section 93-312. It is the latter part of section 93-312 that is particularly relied upon here.

Is section 93-312 valid? The majority opinion I think is self-contradictory. It asserts that it is unnecessary to pass upon the validity of this section and then proceeds with discussion which if sound, adds up to its invalidity. I think it is valid.

Section 12 of Article VIII of our Constitution divides the state into judicial districts and then provides: ''Any judge of the district court may hold court for any other district judge, and shall do so when required by law.''

Section 93-901 merely authorizes the judge of one district to invite a judge of another district to assume jurisdiction over a case in which the local judge is disqualified, but there is no requirement that the judge invited in must accept jurisdiction. He may or may not accept jurisdiction depending upon the condition of the calendar in his own judicial district, or in fact he may decline to accept the invitation without any cause or reason whatsoever except his own whims.

Section 93-312 is the only legislation passed with section 12 of Article VIII in mind. It is the only law requiring a judge to hold court outside of his own district. In other words, section 93-312 is specifically authorized by the Constitution.

It is asserted that by exercising the powers granted by section 93-312 the Governor is exercising judicial powers contrary to section 1, Article IV of our Constitution. Section 93-312 does not purport to confer judicial powers on the governor.

"As used in the Constitution, the expression 'judicial power' means 'the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision'." Shea v. North-Butte Mining Co., 55 Mont. 522, 179 Pac. 499, 504.

The governor in carrying out the power conferred by section 93-312 does not exercise judicial powers. He does not purport to hear, try or determine any case pending before the court but merely designates the judge of one district to hold court in another district. Such statutes are not altogether unheard of. Florida has a statute very similar to our section 93-312. Chapter 15613, Florida Acts of 1931, Ex. Sess. Its validity was upheld in Cormack v. Coleman, 120 Fla. 1, 161 So. 844.

It was not questioned on the specific ground that it confers judicial power on the governor although Florida has a constitutional provision the same as our section 1 of Article IV.

We must not condemn the statute unless it appears beyond a reasonable doubt to be in conflict with some provision of the Constitution. The legislature has power to do anything it pleases unless it is prohibited either directly or by necessary implication by some constitutional provision. Here the Constitution does not prohibit such legislation as section 93-312 but on the contrary it is expressly authorized by section 12 of Article VIII.

In the case of In re Weston, 28 Mont. 207, 72 Pac. 512, 517, the court had before it a statute conferring power upon this court similar to that conferred upon the governor by section 93-312 and this court said: "Finally, the power sought to be conferred upon this court or two of its justices is not judicial in its character but purely ministerial or executive, and invades another department of our state government, which may not be done."

The court then went on to point out that it violated section 1 of Article IV because it conferred ministerial or executive functions on the judiciary. To justify statements made in the majority opinion the Weston case must be overruled.

My associates also rely upon the case of State ex rel. Anaconda Copper Mining Co. v. Clancy, 30 Mont. 529, 77 Pac. 312,

wherein the court undertook to say what was held in the Weston case. Neither of these cases support the conclusion reached in the majority opinion but rather they sustain my view so far as they have to do with questions arising in this case. It should be noted that both of these cases dealt with the question of securing a judge to try a single case. Neither of them dealt with a congested calendar. Neither of them had anything to do with what is now section 93-312, R. C. M. 1947. Language used in the opinion must be considered in the light of the questions before the court.

This court in using language in those cases to the effect that the power of substituting one district judge for another rested with the district judge was considering only the question of whether it rested with the district judge or with the judges of this court. The question of the governor's right was not involved in either of those cases.

The holding in the Weston case that section 12 of Article VIII of the Constitution is exclusive and prohibitory was a holding that section 2 of Article VIII, the section dealing with the supervisory power of this court, did not apply. Such holding was in line with the fundamental rule of construction that when one constitutional or statutory provision treats of a question specifically and the other in general terms the special provision will prevail over the general.

Additionally the court in the Weston case held that section 12, Article VIII, could not vest authority in the legislature to give this court jurisdiction to order the judge of one district to hold court in another because that was a ministerial or executive function which could not be thrust upon this court because of section 1, Article IV of the Constitution.

"The governor of the State has, in some states, statutory authority to appoint or call special or extraordinary terms of courts. Where this power is granted it is for the governor alone to decide as to the necessity for such a term, and his discretion in the matter cannot be reviewed." 21 C. J. S., Courts, sec. 157, p. 246.

The applicable rule is stated in 21 C. J. S., Courts, sec. 168, page 259, as follows: "An order by the governor, chief justice, or other designated officer or officers assigning a judge to sit in another court or to hold court in another county, district, or department, on account of the disqualification of the regular resident judge, the congestion of the calendar, or other adequate cause, is valid and sufficient to confer jurisdiction where it is authorized by a constitutional provision, valid statutory provision, or authorized rule of court and there is a substantial compliance with procedural requirements."

I think the governor is the proper officer under our statute and Constitution under facts such as those involved here to require a judge or judges to hold court in the fifth judicial district to relieve the admitted congestion of the calendar in that district.

I think the orders of Governor Bonner, narrowed as they were by admissions in the answer, were and are valid and should be sustained.

The majority opinion, contrary to the statement made in the Weston case, asserts that under the Constitution it is from this court that relief must come if a district judge is "in need of superintending guidance or correction." If section 12 of Article VIII is exclusive as held in the Weston case, then the supervisory power of this court conferred by section 2 of Article VIII has no application.

I concede that we have supervisory power under section 2 of Article VIII to correct mistakes in individual cases as they are brought to us.

I think when, as in this case, it is sought to compel the district judge of óne district to clean up the congestion of the calendar in another district and particularly where the local judge is disqualified in a great many cases, section 93-312 provides the way and that that section was enacted pursuant to the grant of authority conferred by section 12 of Article VIII of our Constitution. If the validity of section 93-312 need not be considered then what has become of that section? It is the only section of the

statute that confers authority upon any one to require the judge of one district to hold court in another. It applies to the situation here.

The majority opinion seems to find comfort in the case of Commonwealth ex rel. Duff v. Keenan, 347 Pa. 574, 33 A. (2d) 244. In that case the appellate court granted a writ of mandamus upon application of the attorney general to compel the district judge to perform his duties. There was involved no statute such as our section 93-312. The proceeding was based upon a rule of the Supreme Court peculiar to Pennsylvania. If section 12 of Article VIII is exclusive as held in the Weston case then section 3, Article VIII authorizing writs of mandamus has no application.

The imaginary confusion alluded to in the majority opinion has no basis in fact. The orders of Governor Bonner as shown in the return show that in any case where Judge McClernan or any other judge called in by Judge Bennett had assumed jurisdiction, such judge and not Judge Taylor would try such case.

Whether Judge Bennett or Governor Bonner would have authority to call in another judge in case Judge Shea or Judge Taylor was disqualified is not involved here and the fact that it might present an interesting question were such facts before us has nothing to do with the governor's authority under section 93-312 to direct a judge of one district to hold court in another in order to speed up the work in the latter district.

I think too that the only question before us on this proceeding is the validity of Governor Bonner's orders. I think it is improper to convert Judge Bennett's application for relief from those orders into an application for mandamus directed against himself as has been done.

The mandatory writ issued by this court against Judge Bennett came out of a clear sky, with no petition or pleading, without notice or hearing and without statutory or constitutional authority. The order of this court requires reports from Judge Bennett from time to time and yet the majority opinion seems to have doubt as to who is riding herd over Judge Bennett.

I think Governor Bonner's orders issued after notice and hearing and in compliance with the statute and upon admittedly adequate proof, were valid and should have been sustained to the extent to which they were intended to apply as shown by the return.